John W. ETHRIDGE, Jr.,
Plaintiff–Appellant,

v.

HARBOR HOUSE RESTAURANT, an unknown entity; Jim Murphy, individually and as agent of Harbor House Restaurant, and Does 1–25, Defendants–Appellees.

John W. ETHRIDGE, Jr.,
Plaintiff/Counter–Defendant/Appellant,

v.

SAN DIEGO CULINARY CONCEPTS, d/b/a Harbor House; Jim Murphy, Individually and as agent of San Diego Culinary Concepts and Does 1–25, Defendants/Counter–Plaintiffs/Appellees.

Nos. 87–5776, 87–6379.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 1988.

Decided Nov. 17, 1988.

Marie Backes, Backes & Friesen, San Diego, Cal., for plaintiff/counter-defendant/appellant.

Scott A. Wilson and Jody A. Landry, Littler, Mendelson, Fastiff & Tichy, P.C., San Diego, Cal., for defendants/counter-plaintiffs/appellees.

Before HUG, POOLE and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

In these consolidated appeals, John W. Ethridge, Jr. ("Ethridge") appeals from the district court's orders dismissing two complaints filed by him in California state court, but which Harbor House Restaurant ("Harbor House")[1] removed to federal district court on the basis of federal question jurisdiction. See 28 U.S.C. § 1441(b). Ethridge contends that Harbor House improperly removed his first complaint (the "1986 complaint") because the district court lacked jurisdiction over the case. Ethridge argues that the district court should have remanded the action to state court instead of dismissing it on the ground the action was preempted by the exclusive jurisdiction of the National Labor Relations Board ("NLRB"). After the court dismissed the 1986 complaint, Ethridge filed a second complaint (the "1987 complaint") in state court. Harbor House then removed this complaint to federal court. The district court dismissed the 1987 complaint. It concluded that Ethridge's claims were barred by the claim preclusive effect of the prior order dismissing the 1986 complaint,[2] and that any new claims asserted by Ethridge were preempted by sections 7 and 8 of the National Labor Relations Act, 29 U.S.C. §§ 157, 158. Ethridge contends the district court erred in dismissing his 1986 and 1987 complaints.

---

1. In his 1986 complaint, Ethridge named Harbor House Restaurant, an unknown entity, Jim Murphy, individually and as an agent of Harbor House, and Does 1–25 as defendants. In his 1987 complaint, Ethridge named San Diego Culinary Concepts d/b/a Harbor House as defendant, along with Murphy and the Doe defendants. For the sake of clarity, we refer to these parties collectively as "Harbor House."

2. The term "claim preclusion" refers to that branch of the *res judicata* doctrine which "treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.'" *Robi v. Five Platters, Inc.,* 838 F.2d 318, 321 (9th Cir.1988) (citations omitted). For a discussion of claim and issue preclusion as categories of the *res judicata* doctrine, and as preferred terms for "merger," "bar," and "collateral estoppel," see *id.* at 321–22 & n. 2.

We have jurisdiction over these consolidated appeals pursuant to 28 U.S.C. § 1291, and we reverse. We conclude that the district court lacked subject matter jurisdiction over the removed 1986 complaint and therefore should not have dismissed it, but should have remanded the action to California state court. The order dismissing the 1986 complaint should not have been given claim preclusive effect with respect to the 1987 complaint. Because there was no basis for the exercise of removal jurisdiction over the 1987 complaint, the court was without power to dismiss it and should have remanded that action to state court as well.

## I

### FACTS AND PROCEEDINGS

From August 16, 1980, until September 23, 1985, John W. Ethridge, Jr., worked at Harbor House Restaurant pursuant to an oral employment agreement for an indefinite term. Ethridge began his employment at Harbor House as a busboy, but over the years he advanced to the position of bartender. On September 23, 1985, Jim Murphy, one of Harbor House's managers, fired Ethridge, ostensibly for poor job performance and failure to adhere to company policy. Murphy's decision rested on allegations contained in several so-called "shopper's reports," which he declined to show Ethridge at the time of his termination. Ethridge later learned that Murphy had fired him because of suspicions that Ethridge had conspired with one or more waitresses to steal, and had embezzled and stolen, from Harbor House.

On September 23, 1986, Ethridge filed but did not serve a complaint against Harbor House in California state court. On October 31, 1986, Ethridge filed and served a first amended complaint against Harbor House (the "1986 complaint"), in which he sought damages for his allegedly wrongful termination. In paragraphs 10–13 of this complaint, Ethridge alleged that he had engaged in union-organizing activities while at Harbor House. These factual allegations were incorporated by reference in each of Ethridge's nine causes of action.

In a cause of action for breach of contract, Ethridge specifically charged that he was terminated in retaliation for his union-organizing efforts.

On November 26, 1986, Harbor House removed the 1986 complaint to federal district court, asserting federal question jurisdiction under 28 U.S.C. § 1441(b) as the basis for removal jurisdiction. In its removal petition, Harbor House contended that Ethridge's retaliatory discharge claim fell within sections 7 and 8 of the National Labor Relations Act, 29 U.S.C. §§ 157, 158 ("NLRA"), and therefore "arose under" the laws of the United States. The remaining claims were characterized as pendent state claims. On December 1, 1986, Harbor House moved to dismiss the 1986 complaint on the ground that Ethridge's claims were preempted by the exclusive jurisdiction of the National Labor Relations Board.

In response to Harbor House's motion, Ethridge sought Harbor House's agreement to a stipulated amendment of the 1986 complaint deleting paragraphs 10–13, which contained the union-organizing allegations as well as the claim for retaliatory discharge. Ethridge's counsel stated that upon further investigation, she had determined that Ethridge had not been fired because of his union-related activities. Harbor House refused to stipulate to this proposed amendment. As a result, on December 23, 1986, Ethridge unilaterally attempted to amend his complaint by filing a "Partial Dismissal and Order." This document purported to delete paragraphs 10–13 and the retaliatory discharge claim from the 1986 complaint. Contemporaneously with his attempted "Partial Dismissal," Ethridge moved to remand the action to state court, arguing that in view of the partial dismissal, no allegations supporting federal question jurisdiction remained in the complaint. In the alternative, Ethridge contended the district court lacked subject matter jurisdiction over the removed complaint and that it therefore was required to remand the action under 28 U.S.C. § 1447(c).

The district court denied Ethridge's motion to remand. It refused to sign his proposed dismissal order, and ruled that the proposed "Partial Dismissal" was ineffective to amend Ethridge's complaint to eliminate the basis for federal question jurisdiction. On appeal, Ethridge contends that Federal Rule of Civil Procedure 41(a)(1)(i) permits him to use a voluntary dismissal to delete one claim among several from his complaint. We disagree. Although we have not previously addressed this issue, we agree with those courts that have held a plaintiff may not use Rule 41(a)(1)(i) to dismiss, unilaterally, a single claim from a multi-claim complaint. *E.g., Management Investors v. United Mine Workers*, 610 F.2d 384, 394 & n. 22 (6th Cir.1979); *Exxon Corp. v. Maryland Cas. Co.*, 599 F.2d 659, 662 (5th Cir.1979); *United States v. Outboard Marine Corp.*, 104 F.R.D. 405, 414 (N.D.Ill.1984); *C. Van Der Lely N.V. v. F.lli Maschio S.n.c.*, 561 F.Supp. 16, 19–20 (S.D.Ohio 1982); *Smith, Kline & French Labs. v. A.H. Robins Co.*, 61 F.R.D. 24, 27–29 (E.D.Pa.1973). Each of these cases relies on the Moore treatise on federal procedure, which convincingly argues that Federal Rule of Civil Procedure 15(a) is the appropriate mechanism "[w]here a plaintiff desires to eliminate an issue, or one or more but less than all of several claims, but without dismissing as to any of the defendants." 5 J. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice* ¶ 41.06–1, at 41–83 to –84 (1987). The cases relied on by Ethridge are not to the contrary because they either involve the use of Rule 41 to effect a complete dismissal as to all defendants, *see, e.g., Miller v. Reddin*, 422 F.2d 1264, 1266 (9th Cir.1970),

or a partial dismissal of all claims against one codefendant, *see, e.g., Brown v. Texas & Pac. R.R.*, 392 F.Supp. 1120 (W.D.La. 1975).

In granting Harbor House's motion to dismiss the 1986 complaint, the district court concluded that dismissal was proper under either of two theories: First, because Ethridge's claims arose under sections 7 and 8 of the NLRA, 29 U.S.C. §§ 157, 158, they were within the NLRB's exclusive jurisdiction and, therefore, the district court lacked subject matter jurisdiction of the dispute. In the alternative, the court concluded that under the doctrine of "derivative jurisdiction," it lacked jurisdiction over the removed complaint because the state court did not have subject matter jurisdiction in the first instance.[3]

On March 6, 1987, Ethridge filed a new complaint in California state court (the "1987 complaint"). This complaint contained no allegations relating to union-organizing activities by Ethridge and did not state a claim for retaliatory discharge. Harbor House filed a counter-claim against Ethridge in this state court action. It then removed the case to federal district court. In its removal petition, Harbor House contended federal question jurisdiction existed because (1) provisions of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. ("ERISA") preempted Ethridge's claim for tortious discharge; (2) the 1987 complaint was "artfully pleaded" to avoid federal jurisdiction; or (3) the claims were preempted by the NLRA and the NLRB's exclusive jurisdiction.

After it had removed the case to federal court, Harbor House moved to dismiss the 1987 complaint. It based this motion on

**3.** Under the "derivative jurisdiction" doctrine, it was the rule that a district court could acquire no more jurisdiction over a removed case than had the state court in which the action was commenced. *See, e.g., Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1430 (9th Cir.1984). Thus, "upon removal to a federal court of an exclusively federal question, *i.e.*, one over which the state court had no jurisdiction, we have held that the federal court is without jurisdiction to entertain the litigation on the merits." *Id.* at 1431. The course followed by most courts faced with "derivative jurisdiction" cases was simply to dismiss the case. *See id.; see also Franchise Tax Bd. v. Construction La-*

*borers Vacation Trust*, 463 U.S. 1, 24 n. 27, 103 S.Ct. 2841, 2854 n. 27, 77 L.Ed.2d 420 (1983) (explaining the doctrine).

In 1986, however, Congress enacted 28 U.S.C. § 1441(e), which abolishes the derivative jurisdiction doctrine. Section 1441(e) became effective with respect to all civil actions commenced in state courts on or after June 19, 1986. *See* Pub.L. No. 99–336, § 3(b), 100 Stat. 637 (1986). Ethridge filed his original complaint in state court on September 23, 1986, and filed and served his first amended complaint on October 31, 1986. Consequently, the derivative jurisdiction doctrine does not support the district court's dismissal of the 1986 complaint.

the alleged claim preclusive effect of the order dismissing the 1986 complaint, as well as NLRB preemption of any claims not barred by *res judicata.* The district court dismissed the complaint. It reasoned that while there was not a sufficient basis for removal under ERISA, the 1987 complaint was "artfully pleaded" to avoid the claim preclusive effect of the court's order dismissing the 1986 complaint. The court also held that to the extent the 1986 and 1987 complaints stated different claims, the NLRB's primary jurisdiction preempted the remaining claims of the 1987 complaint, just as it had the claims stated in the 1986 complaint.

Ethridge appeals from the district court's order dismissing the 1986 complaint and from the district court's order dismissing the 1987 complaint. The two appeals have been consolidated.

## II

### STANDARD OF REVIEW

■■■ We review de novo the denial of a motion to remand an action to state court for want of removal jurisdiction. *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 996 (9th Cir.1987). This is because removal of a case from state to federal court in the first instance is a question of federal subject matter jurisdiction, which we review de novo. *Williams v. Caterpillar Tractor Co.,* 786 F.2d 928, 940 (9th Cir.1986), *aff'd,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The party invoking the removal statute bears the burden of establishing federal jurisdiction. *Id.* Furthermore, the removal statute is strictly construed against removal jurisdiction. *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1195 (9th Cir.1988); *Sullivan v. First Affiliated Secs., Inc.,* 813 F.2d 1368, 1371 (9th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987).

## III

### THE 1986 COMPLAINT

A. *Removal Jurisdiction—General Principles*

The principles of federal removal jurisdiction have been with us for over one hundred years. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 7, 103 S.Ct. 2841, 2845, 77 L.Ed.2d 420 (1983). The Court in several recent decisions has re-explored the basic parameters of removal jurisdiction. *See, e.g., Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 1546–48, 95 L.Ed.2d 55 (1987); *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 3232–37, 92 L.Ed. 2d 650 (1986); *Franchise Tax Bd.,* 463 U.S. at 7–12, 103 S.Ct. at 2845–47. Guided by these cases, as well as by the language of the removal statute, *see* 28 U.S.C. § 1441, we conclude that the district court lacked subject matter jurisdiction over the removed 1986 complaint, and was required to remand the action to state court. *See id* § 1447(c).

The removal statute authorizes a defendant to remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." *Id.* § 1441(a). Consequently, "[o]nly [those] state court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar,* 107 S.Ct. at 2429; *see Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 997 (9th Cir.1987); *Sullivan v. First Affiliated Secs., Inc.,* 813 F.2d 1368, 1371 (9th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987); *see also Derrico v. Sheehan Emergency Hosp.,* 844 F.2d 22, 27 (2d Cir.1988) ("Removal is appropriate when a state court action could originally have been filed in federal court."). Absent diversity of citizenship, only cases within the district court's original "federal question" jurisdiction may be removed from state to federal court. *Caterpillar,* 107 S.Ct. at 2429. The present case is not a diversity case.

"Federal question" cases are those cases "arising under the Constitution, laws, or treaties of the United States." *Metropoli-*

*tan Life,* 107 S.Ct. at 1546 (quoting 28 U.S.C. § 1331). It is not always an easy task to determine when a case "arises under" federal law. The Constitution grants to the judiciary jurisdiction of "all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority...." U.S. Const. art. III, § 2. This constitutional "arising under" jurisdiction has been "construed as permitting Congress to extend federal question jurisdiction to any case of which federal law potentially 'forms an ingredient.'" *Franchise Tax Bd.,* 463 U.S. at 8 n. 8, 103 S.Ct. at 2845 n. 8 (quoting *Osborn v. Bank of United States,* 22 U.S. (9 Wheat.) 738, 823, 6 L.Ed. 204 (1824)). The Court, however, has told us that the statutory grant of federal question jurisdiction is more limited. *See Merrell Dow,* 106 S.Ct. at 3232; *Franchise Tax Bd.,* 463 U.S. at 8 n. 8, 103 S.Ct. at 2845 n. 8. Nevertheless,

> the statutory phrase "arising under the Constitution, laws, or treaties of the United States" has resisted all attempts to frame a single, precise definition for determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts. Especially when considered in light of § 1441's removal jurisdiction, the phrase "arising under" masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.

*Franchise Tax Bd.,* 463 U.S. at 8, 103 S.Ct. at 2845.

The most familiar definition of "arising under" jurisdiction is that of Justice Holmes: "A suit arises under the law that creates the cause of action." *Id.* at 8–9, 103 S.Ct. at 2845–46 (quoting *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916)). When a plaintiff's com-

plaint relies on federal law as the source of recovery, it is obvious that the case "arises under" federal law and therefore may be removed to federal court. *Id.* 463 U.S. at 9, 103 S.Ct. at 2846; *see also Merrell Dow,* 106 S.Ct. at 3233 ("[T]he vast majority of cases brought under the general federal-question jurisdiction are those in which federal law creates the cause of action."). The Holmes definition, however, serves better to describe those cases within the federal question jurisdiction of the federal district courts, than those outside it. *Franchise Tax Bd.,* 463 U.S. at 9, 103 S.Ct. at 2846. This is because the Court has "often held that a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law." *Id.*[4] Because a broad definition of "arising under" would create the possibility for "a number of potentially serious federal-state conflicts," *id.* at 10, 103 S.Ct. at 2846, the Court has developed the "well-pleaded complaint rule," which has become "the basic principle marking the boundaries of the federal question jurisdiction of the federal district court." *Metropolitan Life,* 107 S.Ct. at 1546.

> The presence or absence of federal-question jurisdiction is governed by the "well-pleaded" complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

*Caterpillar,* 107 S.Ct. at 2429 (citation and footnote omitted); *see also Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 996 (9th Cir.1987) (quoting *Caterpillar*); *Paige v. Henry J. Kaiser Co.,* 826 F.2d 857, 860 (9th Cir.1987) (same), *cert. denied,* ——

---

**4.** In *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), the Court considered in detail the principles of removal jurisdiction when applied to a well-pleaded complaint that relies on a state cause of action which incorporates federal law as one of the elements of recovery. The Court held that in such a case,

the state claim does not involve a substantial federal question unless the federal law incorporated in the state cause of action provides a federal private right of action for its violation. *Id.* 106 S.Ct. at 3237; *see also Utley v. Varian Assoc., Inc.,* 811 F.2d 1279 (9th Cir.) (applying *Merrell Dow*), *cert. denied,* —— U.S. ——, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987).

U.S. ——, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988).

The well-pleaded complaint rule, "for reasons involving perhaps more history than logic," *Franchise Tax Bd.*, 463 U.S. at 4, 103 S.Ct. at 2843, has generated certain principles that govern its application. As a general proposition, the plaintiff is master of his or her complaint. *Sullivan v. First Affiliated Secs., Inc.*, 813 F.2d 1368, 1371 (9th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987). If the plaintiff may sue on either state or federal grounds, the plaintiff may avoid removal simply by relying exclusively on the state law claim. *Id.* at 1372. "For better or worse, under the present statutory scheme as it has existed since 1887, a defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." *Franchise Tax Bd.*, 463 U.S. at 10, 103 S.Ct. at 2846 (emphasis in original; footnote omitted). It necessarily follows that "[t]he defendant cannot obtain removal jurisdiction merely by asserting a federal defense." *Sullivan*, 813 F.2d at 1371. As the Supreme Court has explained,

> Thus, it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987) (emphasis in original) (citing *Franchise Tax Bd.*, 463 U.S. at 12, 103 S.Ct. at 2847); *see also Franchise Tax Bd.*, 463 U.S. at 10, 103 S.Ct. at 2846; *Sullivan*, 813 F.2d at 1371–72.

In Ethridge's 1986 complaint, he relies exclusively on state law to define his claims against Harbor House. Nowhere on the face of his complaint does he seek a recovery under federal law. Yet Harbor House sought and obtained removal. It did so in spite of the well-pleaded complaint rule by pointing to Ethridge's allegations of retaliatory discharge. Harbor House contended that these allegations set forth a claim

under sections 7 and 8 of the NLRA, which Harbor House argues "completely preempts" Ethridge's state law claims, thus providing a basis for removal jurisdiction.

■ In its *Franchise Tax Board, Metropolitan Life* and *Caterpillar* decisions, the Court has explained that

> [t]here ... exist[s] ... an "independent corollary" to the well-pleaded complaint rule known as the "complete pre-emption" doctrine. On occasion, the Court has concluded that the pre-emptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.

*Caterpillar*, 107 S.Ct. at 2430 (citations and footnote omitted) (analyzing *Franchise Tax Board*, 463 U.S. at 22, 24, 103 S.Ct. at 2852, 2854, and *Metropolitan Life*, 107 S.Ct. at 1547). In applying the "complete preemption" doctrine, we have emphasized that it is not enough that federal law preempts state law, federal law also must "supplant [the state law claim] with a federal claim." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987).

> The federal claim requirement arises from the limitations on removal jurisdiction contained in 28 U.S.C. § 1441. If the plaintiff could not have asserted a federal claim based on the allegations of her state law complaint, she could not have brought the case originally in federal court as required for removal jurisdiction under section 1441.

*Id.*

■ In deciding whether sections 7 and 8 of the NLRA completely preempt Ethridge's state law claim for retaliatory discharge, we note that the well-pleaded complaint rule is a function of federalism. *See, e.g., Franchise Tax Bd.*, 463 U.S. at

9–10, 103 S.Ct. at 2846 (explaining that the well-pleaded complaint rule minimizes federal-state conflicts by limiting "the number of cases in which state law 'creates the cause of action' that may be initiated in or removed to federal district court"); *see Price v. PSA, Inc.,* 829 F.2d 871, 873 (9th Cir.1987); *cert. denied,* —— U.S. ——, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988). We are also mindful that deciding whether federal law "completely preempts" state law calls for a careful evaluation of congressional intent. *See, e.g., Metropolitan Life,* 107 S.Ct. at 1548 ("[T]he touchstone of the district court's removal jurisdiction is not the 'obviousness' of the pre-emption defense but the intent of Congress."); *Merrell Dow,* 106 S.Ct. at 3234–35 (observing that congressional intent to provide federal private right of action is test for removal jurisdiction over state law claim that requires resolution of a substantial disputed issue of federal law); *Paige v. Henry J. Kaiser Co.,* 826 F.2d 857, 861 (9th Cir.1987) ("In determining whether the federal law preempts the state law, the essential inquiry is the intent of Congress in enacting the federal statute."), *cert. denied,* —— U.S. ——, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988). Thus, when we consider whether the NLRA provides a complete preemption basis for removal, which trumps the well-pleaded complaint rule, we must heed the Court's admonition that "in exploring the outer reaches of § 1331 [the federal question statute], determinations about federal jurisdiction require sensitive judgements about congressional intent, judicial power, and the federal system." *Merrell Dow,* 106 S.Ct. at 3233.

**B.** *Garmon–Preemption and Removal Jurisdiction*

■ Harbor House relies on sections 7 and 8 of the NLRA to show that Ethridge's retaliatory discharge claim is preempted by federal law. Section 7 provides in pertinent part, "Employees shall have the right to self-organization, to form, join, or assist labor organization...." 29 U.S.C. § 157. Under section 8(a),

> It shall be an unfair labor practice for an employer—

> (1) to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section 157 of this title;

> . . . .

> (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization....

*Id.* § 158(a)(1), (3). Based on these sections, the district court concluded that it had jurisdiction over the removed 1986 complaint because Ethridge's retaliatory discharge claim arose under the NLRA—federal law that completely preempted the state law claims. But for the district court to have removal jurisdiction, it must have had original jurisdiction. It did not.

In enacting the National Labor Relations Act, Congress created a "complex and interrelated federal scheme of law, remedy, and administration." *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 243, 79 S.Ct. 773, 778, 3 L.Ed.2d 775 (1959). It also is true that section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA"), which was adopted as an amendment to the National Labor Relations Act,

> displace[s] entirely any state cause of action for violation of a collective bargaining agreement. In such a case, the action may be removed to federal court even if an otherwise adequate state cause of action may exist. The Supreme Court recently reiterated that Section 301 preempts claims founded directly on rights created by collective bargaining agreements, and also claims which are substantially dependent on analysis of a collective bargaining agreement.

*Paige v. Henry J. Kaiser Co.,* 826 F.2d 857, 861 (9th Cir.1987) (discussing *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), and *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)), *cert. denied,* —— U.S. ——, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988). But because we must consider "the intent of Congress in enacting the federal

statute [28 U.S.C. §§ 157, 158]," *id.*, we are not free to conclude that because actions under section 301 of the LMRA are removable to federal district court, actions under sections 7 and 8 of the NLRA are likewise removable. Indeed, the Supreme Court has made it plain that actions under sections 7 and 8 of the NLRA are committed by Congress in the first instance to the National Labor Relations Board. *See, e.g., Garmon*, 359 U.S. at 242–43, 79 S.Ct. at 778 (quoting *Garner v. Teamsters Union*, 346 U.S. 485, 490–91, 74 S.Ct. 161, 165–66, 98 L.Ed. 228 (1953)). The principal consequence of the NLRB's "primary jurisdiction," *see Sears, Roebuck & Co. v. San Diego Dist. Council of Carpenters*, 436 U.S. 180, 199 n. 29, 98 S.Ct. 1745, 1758 n. 29, 56 L.Ed.2d 209 (1978), is that "[w]hen an activity is arguably subject to § 7 or § 8 of the Act, the States *as well as the federal courts* must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Garmon*, 359 U.S. at 245, 79 S.Ct. at 780 (emphasis added). As the Tenth Circuit has explained,

> Sections 7 and 8 do not confer original federal court jurisdiction over actions within its scope; they confer jurisdiction in the first instance upon the National Labor Relations Board (NLRB).
>
> Under principles announced in [*Garmon*], both state and federal courts generally lack original jurisdiction to determine disputes involving conduct actually or arguably protected or prohibited by the NLRA. The Supreme Court has considered it essential to the administration of the NLRA that determinations regard-

ing the scope and effect of §§ 7 and 8 "be left in the first instance to the National Labor Relations Board."

*United Ass'n of Journeymen & Apprentices of Plumbing & Pipe Fitting Indus., Local No. 57 v. Bechtel Power Corp.*, 834 F.2d 884, 886–87 (10th Cir.1987) (citations omitted), *cert. denied*, —— U.S. ——, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988).

That sections 7 and 8 do not confer original federal question jurisdiction on the federal district courts should end our inquiry in this case. As we said in the foregoing section of our analysis, when a district court lacks original jurisdiction, it likewise lacks removal jurisdiction. Lacking jurisdiction, 28 U.S.C. § 1447(c) requires the district court to remand the action to the state court.[5] Notwithstanding this rather clear statutory directive, however, some of our decisions seem to suggest that dismissal might be the proper course when an action within sections 7 and 8 of the NLRA is removed to federal court. These cases may be reconciled with our decision today. But in doing so, we must first acknowledge that we did not speculate very well when we theorized in a footnote:

> The NLRA *may* constitute a fairly unique area of law where, at least in some cases, the determination of federal jurisdiction in the National Labor Relations Board (NLRB) employs the identical analysis required to determine whether a state law claim is preempted. If the activity underlying a state law claim is "arguably subject" to regulation under sections 7 and 8 of the NLRA, 29 U.S.C. §§ 157, 158, the action is both preempted and falls within the exclusive jurisdiction of the NLRB. A federal court *may* be

---

5. 28 U.S.C. § 1447(c) provides in pertinent part:

If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court *shall remand* the case, and may order the payment of just costs.... The State court may thereupon proceed with such case. (Emphasis added).

While this statute mandates remand when, in the conjunctive, a case has been removed improvidently *and* without jurisdiction, we previously have read the statute in the disjunctive. *See, e.g., Clorox Co. v. United States Dist. Court*, 779 F.2d 517, 520 (9th Cir.1985) ("[S]ection

1447(c) ... allows remand if removal was 'improvidently' granted *or* if the district court is 'without jurisdiction.'" emphasis added)). And, while it might be possible to conceive of a case that is removed "improvidently" to a federal district court which has subject matter jurisdiction, a case over which the district court is "without jurisdiction" is always "improvidently" removed. *See Williams v. City of Atlanta*, 794 F.2d 624, 628 (11th Cir.1986) ("[I]f the federal court acting in removal jurisdiction determines that federal jurisdiction does not exist, it remands rather than dismisses because removal was 'improvident.'").

able to take jurisdiction over a case removed from state court for the limited purpose of determining whether exclusive federal jurisdiction exists in the NLRB.

*Williams v. Caterpillar Tractor Co.*, 786 F.2d 928, 934 n. 3 (1986), *aff'd*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (emphasis added). In another case, in which we concluded that the Railway Labor Act, 45 U.S.C. § 152, did not completely preempt a state law claim for retaliatory discharge, we said that absent clear congressional intent to preempt state law, we would not ourselves create federal jurisdiction. *Price v. PSA, Inc.*, 829 F.2d 871, 876 (9th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988). Speaking for the court, Judge Sneed explained, "Congress or the Supreme Court can steady us if either finds our step faulty." *Id.* We think that in its recent *Caterpillar* decision, as well as in other, earlier decisions, the Supreme Court has steadied us upon the proper path from which we may have strayed by our speculation in our *Caterpillar* footnote.

In its *Garmon* decision, the Supreme Court observed that in enacting sections 7 and 8 of the NLRA, Congress did not intend to preempt all regulation of labor-related matters by the states. *See Garmon*, 359 U.S. at 240, 79 S.Ct. at 777. The Court explained that

> due regard for the presuppositions of our embracing federal system ... has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. Or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to Act.

*Id.* at 243–44, 79 S.Ct. at 779 (citation and footnote omitted). The Court also concluded, however, that "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the [NLRA], or constitute an

unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." *Id.* at 244, 79 S.Ct. at 779.

Since the *Garmon* decision, there have been a number of cases in which the Court has commented upon the bounds of the so-called *Garmon*-preemption doctrine and the exceptions to the "exclusive primary competence of the [NLRB]," *id.* at 245, 79 S.Ct. at 779, identified by the *Garmon* Court. *See, e.g., Farmer v. United Bhd. of Carpenters & Joiners*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977); *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978); *Belknap, Inc. v. Hale*, 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983); *Brown v. Hotel & Restaurant Employees*, 468 U.S. 491, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *International Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986). These decisions have not always been easy to apply. *See, e.g., Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 285, 91 S.Ct. 1909, 1917, 29 L.Ed. 2d 473 (1971) (examining the arguments made against NLRB preemption "because of the understandable confusion, perhaps in some measure attributable to the previous opinions of this Court, they reflect over the jurisdictional bases upon which the *Garmon* doctrine rests"). In its recent decision in *International Longshoremen's Association v. Davis*, 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986), however, the court clarified the nature of *Garmon*-preemption. It is now settled law that *Garmon*-preemption is a jurisdictional doctrine based on the presumed intent of Congress that the NLRB should generally exercise jurisdiction over cases falling within sections 7 and 8 of the NLRA. *Id.* at 391, 106 S.Ct. at 1912.

> [W]hen a state proceeding or regulation is claimed to be pre-empted by the NLRA under *Garmon*, the issue is a choice-of-forum rather than a choice-of-law ques-

tion. As such, it is a question whether the State or Board has jurisdiction over the dispute. If there is pre-emption under *Garmon,* then state jurisdiction is extinguished.

*Id.* (footnote omitted).

It is also clear that the *Garmon* analysis is not one to be undertaken by the lower federal courts. "A claim of *Garmon* pre-emption is a claim that the state court has no power to adjudicate the subject matter of the case, and when a claim of *Garmon*-preemption is raised, *it must be considered and resolved by the state court." Id.* at 393, 106 S.Ct. at 1913 (emphasis added). If the state court errs in determining whether *Garmon* principles deprive it of jurisdiction over a dispute, review of that decision may be had in the Supreme Court. *See, e.g., Davis,* 476 U.S. at 388–89, 106 S.Ct. at 1911 (concluding that *Garmon*-preemption always supplies a federal question for the Court to review on appeal); [6] *cf. Franchise Tax Bd.,* 463 U.S. at 12 n. 12, 103 S.Ct. at 2848 n. 12.

The Supreme Court has not yet expressly considered whether a state claim alleged to be preempted by the NLRA under the *Garmon* analysis may be removed to federal court. But there is dicta in two recent cases addressing labor law removal issues which strongly suggest that *Garmon* cases are not removable. In *Merrell Dow,* the Court criticized the defendants' argument that there should be removal jurisdiction because of the need to ensure uniform interpretation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 et seq.

To the extent that petitioner is arguing that state use and interpretation of the FDCA pose a threat to the order and stability of the FDCA regime, petitioner should be arguing, not that federal courts should be able to review and enforce state FDCA-based causes of action as an aspect of federal-question jurisdiction, but that the FDCA pre-empts state-court jurisdiction over the issue in dispute.

*Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 3236–37, 92 L.Ed.2d 650 (1986). In support of this statement, the Court cited its decision in *International Longshoremen's Association v. Davis,* 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986), which held that *Garmon*-preemption is a jurisdictional doctrine. *See Merrell Dow,* 106 S.Ct. at 3237 n. 13. A reasonable implication from the Court's statement in *Merrell Dow,* then, is that *Garmon*-preemption is not "an aspect of federal-question jurisdiction." Rather, *Garmon*-preemption is a jurisdictional issue that should be addressed by the state courts.

More telling, however, is the Supreme Court's recent decision in *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), in which the Court affirmed our *Caterpillar* decision, 786 F.2d 928 (9th Cir.1986). It was in footnote 3 of our *Caterpillar* case that we theorized that the NLRA and *Garmon*-preemption *may* provide a unique basis for removal jurisdiction for the limited purpose of protecting the exclusive jurisdiction of the NLRB. *See* 786 F.2d at 934 n. 3. Significantly,

---

**6.** The Court explained:

It is clearly within Congress' powers to establish an exclusive federal forum to adjudicate issues of federal law in a particular area that Congress has the authority to regulate under the Constitution. Whether it has done so in a specific case is the question that must be answered when a party claims that a state court's jurisdiction is pre-empted. Such a determination of congressional intent and the boundaries and character of a pre-empting congressional enactment is one of federal law. Pre-emption, the practical manifestation of the Supremacy Clause, is always a federal question.

*Davis,* 476 U.S. at 388, 106 S.Ct. at 1910 (citation omitted). The Court's statement that "[p]re-

emption ... is always a federal question" must be read *with care. It was in* the context of determining whether the Court had appellate jurisdiction under 28 U.S.C. § 1257(2) that it made this statement. *See id.* at 387, 106 S.Ct. at 1910. The statement addressed the issue whether the Alabama Supreme Court's decision rested on an "independent and adequate state ground supporting the judgment below," *id.,* which would have precluded review by the Supreme Court. Questions of original and removal jurisdiction of the district courts as defined by 28 U.S.C. §§ 1331 and 1441, and the impact of the NLRA, were not before the Court and not addressed by it.

although the Court did not expressly disavow our speculation in footnote 3, its analysis strongly undercuts our augury. *Caterpillar* arose in the context of section 301 of the LMRA, 29 U.S.C. § 185(a), which Caterpillar incorrectly asserted permitted the exercise of removal jurisdiction over a case involving individual employment contracts made by parties who later take positions covered by a collective bargaining agreement. *See id.* 107 S.Ct. at 2431–32. In rejecting several of Caterpillar's arguments for removal jurisdiction, the Court explained:

> [I]f an employer wishes to dispute the continued legality or viability of a pre-existing employment contract because an employee has taken a position covered by a collective bargaining agreement, it may raise this question in state court. The employer may argue that the individual employment contract has been pre-empted due to the principle of exclusive representation in § 9(a) of the [NLRA].

*Id.* at 2432. The court then stated in language plainly directed to the suggestion in our footnote 3:

> Or the employer may contend [in state court] that enforcement of the individual employment contract arguably would constitute an unfair labor practice under the NLRA, and is therefore pre-empted. *The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court.*

*Id.* (citation and footnote omitted; emphasis added). Finally, although the Court expressed no view on the merits of "any of the pre-emption arguments discussed above," *id.* at 2433 n. 13, the Court also was careful to observe, "These [preemption arguments] are questions that must be addressed in the first instance *by the state court* in which respondents filed their claims." *Id.* (emphasis added).

Based upon the foregoing, we think it is now clear that state law actions claimed to be preempted by sections 7 and 8 of the NLRA are not removable to federal court.[7] As we have previously stated, there can be no removal jurisdiction unless the plaintiff could have commenced the action in federal court. Even if Ethridge had filed his claim for retaliatory discharge in federal court using a complaint expressly relying on sections 7 and 8 of the NLRA, there would have been no subject matter jurisdiction. Though sections 7 and 8 may create a federal cause of action, it is not within the federal court's jurisdiction to resolve the dispute—it is for the NLRB to decide the case. Accordingly, the district court should have remanded the action to state court under 28 U.S.C. § 1447(c). *See Williams v. City of Atlanta,* 794 F.2d 624, 628 (11th Cir.1986) (explaining that an action removed "without jurisdiction must be remanded" to state court).

Nothing in the history of the *Garmon* doctrine suggests that state courts are incapable of determining their own jurisdiction. Indeed, the Supreme Court made absolutely clear in its *Davis* decision that the *Garmon*-preemption analysis is one that the state courts are to undertake in the first instance. Moreover, practical experience with this jurisdictional framework shows that state courts are fully cognizant

---

7. We note, of course, that the Supreme Court has told us that actions against a union for breach of the statutory duty of fair representation under section 8(b)(1)(A) are removable to federal court. *See Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); *see also Stallcop v. Kaiser Found. Hosp.,* 820 F.2d 1044, 1047 (9th Cir.) (applying *Vaca* ), *cert. denied,* —— U.S. ——, 108 S.Ct. 504, 98 L.Ed.2d 502 (1987). The Court's decision in *Vaca* rested on its conclusion that Congress did not intend the NLRB's exclusive jurisdiction to preempt actions for breach of the duty of fair representation. *Id.* at 180–83, 87 S.Ct. at 911–13. In reaching this conclusion, the Court noted that Congress has created some exceptions to the Board's exclusive jurisdiction. *Id.* at 179–80, 87 S.Ct. at 910–11. Thus, cases involving section 8(b)(4) are removable, *see* 29 U.S.C. § 187, as are cases for breach of a collective bargaining agreement, *see* 29 U.S.C. § 185. Moreover, 29 U.S.C. § 164(c) grants state agencies and courts jurisdiction over a limited class of cases, provided the Board declines to exercise its jurisdiction. *See Vaca,* 386 U.S. at 179–80, 87 S.Ct. at 910–11. The present case, however, involves sections 7 and 8(a)(1), (3), of the NLRA and the Supreme Court has said that Congress did not intend actions under these sections to be within the original jurisdiction of the federal courts.

of the limits on their jurisdiction when an activity actually or arguably falls within sections 7 and 8. *See, e.g., Henry v. Intercontinental Radio, Inc.,* 155 Cal.App.3d 707, 202 Cal.Rptr. 328 (1984) (dismissing complaint because causes of action alleged by plaintiff were within the exclusive jurisdiction of the NLRB).

We also note that none of our prior decisions is contrary to this position. *Buscemi v. McDonnell Douglas Corp.,* 736 F.2d 1348 (9th Cir.1984), does not require a different result, even though that case upheld the district court's dismissal of a removed complaint stating claims within the exclusive jurisdiction of the NLRB. *See id.* at 1350. In *Buscemi,* the district court dismissed the complaint when it decided that it lacked subject matter jurisdiction. Buscemi argued on appeal that the court had jurisdiction. *Id.* Consequently, we did not consider whether dismissal or remand was the appropriate remedy once a court correctly concludes it lacks jurisdiction over a removed complaint.

In *Stallcop v. Kaiser Foundation Hospitals,* 820 F.2d 1044, 1047 (9th Cir.), *cert. denied,* ─── U.S. ───, 108 S.Ct. 504, 98 L.Ed.2d 502 (1987), we said that there was removal jurisdiction over a state action for breach of the duty of fair representation by a labor union. We upheld removal jurisdiction because such a claim "must be based on federal labor law, section 8(b)(1)(A) of the [NLRA]." *Id.* This statement was made, however, against the backdrop of the Supreme Court's decision in *Vaca v. Sipes* in which the Court had held that, notwithstanding the NLRB's exclusive jurisdiction over actions under section 8 of the NLRA, federal courts have jurisdiction over claims for breach of the duty of fair representation. *See Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

In *Survival Systems v. United States District Court,* 825 F.2d 1416 (9th Cir. 1987), *cert. denied,* ─── U.S. ───, 108 S.Ct. 774, 98 L.Ed.2d 861 (1988), we implicitly assumed claims preempted by the NLRA are removable to federal court. But the precise issue we considered was whether a writ of mandamus should issue to prevent a district court from remanding a case to state court once the basis for federal jurisdiction has been dismissed. *Id.* at 1418. Finally, in *Vincent v. Trend Western Technical Corp.,* 828 F.2d 563 (9th Cir.1987), we explained that if the plaintiff "was discharged for engaging in a protected concerted activity, his complaint was within the exclusive jurisdiction of the National Labor Relations Board and was properly dismissed." *Id.* at 566. However, in *Vincent,* the retaliatory discharge claim was added by the plaintiff *after* his complaint had been removed from state court. Thus, we had no occasion to consider in that case the appropriate way to handle a complaint sought to be removed from state court on the basis of NLRA-preemption.

On the other hand, there are decisions of this court, and of district courts in this circuit and outside it, which support the decision we announce today. In *Paige v. Henry J. Kaiser Co.,* 826 F.2d 857 (9th Cir.1987), *cert. denied,* ─── U.S. ───, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988), we discussed the *Garmon*-preemption doctrine and observed that "if a claim is preempted under Garmon analysis, it is the NLRB, not the courts, which has jurisdiction." *Id.* at 862; *see also Machinists Automotive Trades Dist. Lodge No. 190 v. Peterbilt Motors Co.,* 666 F.Supp. 1352, 1355–56 (N.D.Cal.1987); *Dow Chem. Co. v. District 50 Allied & Tech. Workers,* 315 F.Supp. 427, 429–30 (D.Colo.1970). This is precisely our point—federal district courts have no jurisdiction to decide the merits of a claim within the NLRB's exclusive jurisdiction. If these courts have no original jurisdiction, they certainly do not have removal jurisdiction.

C. *Conclusion Regarding the 1986 Complaint*

To summarize, we conclude that the district court lacked removal jurisdiction over the 1986 complaint. While sections 7 and 8 of the NLRA prohibit termination of employment in retaliation for union-related efforts, an action based upon allegations of such conduct may not be pursued in the federal district courts. Congress has cre-

ated a system of labor law in which the majority of the controversies between employees and management or management and labor unions are committed to the expertise of the NLRB. Congress did not intend, however, to preempt all state regulation of labor-related matters. The Court has excepted from this *Garmon*-preemption doctrine matters of only peripheral concern to the federal labor law system, and matters of peculiar concern to the states. *See Garmon,* 359 U.S. at 243–44, 79 S.Ct. at 778–79. To accommodate these exceptions, it is the state courts, not the federal courts, that must decide in the first instance whether the states have jurisdiction over a given case. *Cf. Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213 n. 9, 105 S.Ct. 1904, 1912 n. 9, 85 L.Ed.2d 206 (1985) (describing *Garmon* as requiring balancing of state and federal interests). If the action is one actually or arguably covered by sections 7 and 8, a state court's jurisdiction to adjudicate the controversy is extinguished and state law is preempted by federal law. *Brown v. Hotel & Restaurant Employees,* 468 U.S. 491, 502, 104 S.Ct. 3179, 3185, 82 L.Ed.2d 373 (1984). But state courts must make this initial determination, subject to review by the Supreme Court, not the federal district courts. *See Franchise Tax Bd.,* 463 U.S. at 12 n. 12, 103 S.Ct. at 2848 n. 12 ("And, of course, the absence of original jurisdiction does not mean that there is no federal forum in which a preemption defense may be heard. If the state courts reject a claim of federal pre-emption, that decision may ultimately be reviewed on appeal by this Court.").

## IV

## THE 1987 COMPLAINT

### A. *Appellate Jurisdiction*

■ As a threshold matter, we must determine whether we have appellate jurisdiction over the appeal from the dismissal of the 1987 complaint. We have jurisdiction over the appeal from the dismissal of the 1986 complaint because the court's order there was final and the notice of appeal

was timely filed. The notice of appeal from the order dismissing the 1987 complaint, however, was premature. The district court's order dismissing the 1987 complaint left Harbor House's counterclaim against Ethridge unresolved. If a district court's order does not dispose of all claims against all parties, there is no "final order" within the meaning of 28 U.S.C. § 1291. *See Anderson v. Allstate Ins. Co.,* 630 F.2d 677, 680 (9th Cir.1980). Ethridge did not obtain a Rule 54(b) certification from the district court. *See Freeman v. Hittle,* 747 F.2d 1299, 1301–02 (9th Cir.1985) (concluding that "if neither party is prejudiced, a [Rule] 54(b) certification is sufficient to validate a premature notice of appeal"). This, however, does not necessarily preclude our exercise of jurisdiction over this appeal. As we said in our *Anderson* decision, "subsequent events can validate a prematurely filed appeal." *Anderson,* 630 F.2d at 681. Harbor House conceded at oral argument that its counter-claim against Ethridge was dismissed after Ethridge's notice of appeal was filed. This validates Ethridge's otherwise premature notice of appeal. *See id.* at 680 (agreeing with decisions of the Fifth and Tenth Circuits holding that "orders adjudicating only some of the claims may be treated as final orders if the remaining claims have subsequently been finalized"). We therefore have appellate jurisdiction over Ethridge's appeal from the dismissal of his 1987 complaint.

### B. *Removal of the 1987 Complaint*

In its petition for removal of the 1987 complaint, Harbor House asserted three grounds for federal question removal jurisdiction: (1) artful pleading by Ethridge to avoid the claim preclusive effect of the order dismissing the 1986 complaint; (2) NLRA preemption of any claims in the 1987 complaint not barred by the 1986 dismissal; and (3) ERISA preemption of Ethridge's claim for tortious discharge. The district court rejected Harbor House's claim of ERISA preemption. The court, however, concluded that it had jurisdiction because of the artful pleading doctrine, as well as NLRA preemption. In the previous part of this opinion we held that, subject to

certain exceptions not applicable to this case, sections 7 and 8 of the NLRA do not provide a basis for federal question jurisdiction, either originally or on removal from a state court. To the extent the district court's dismissal of the 1987 complaint rested on the assumption of NLRA preemption under the *Garmon* doctrine, it was incorrect. But we still must consider whether some other basis existed for the exercise of removal jurisdiction.

### 1. Artful Pleading

In our recent decision in *Sullivan v. First Affiliated Securities, Inc.,* 813 F.2d 1368 (9th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987), we had occasion to examine in depth the "artful pleading" doctrine. We explained that the doctrine is an out-growth of the well-pleaded complaint rule. *See id.* at 1372. That is, although the plaintiff is master of the complaint and may rely on either federal or state law to define his or her cause of action, and thereby control the forum for the complaint's adjudication, it is also an accepted rule that "the plaintiff cannot defeat removal by masking or 'artfully pleading' a federal claim as a state claim." *Id.* (quoting 14A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3722 (1985)).

Since our decision in *Sullivan,* the Court has used the term "complete pre-emption doctrine" to describe those cases in which federal law completely preempts state law and provides a federal remedy. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987); *see also Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed. 2d 55 (1987). We have done the same, and have placed these cases under the rubric of the artful pleading doctrine. In *Hyles v. Mensing,* 849 F.2d 1213 (9th Cir.1988), the complaint failed to disclose a collective bargaining agreement that formed the basis for the plaintiff's action. We held that the plaintiff's claims were completely preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), and that the plaintiff could not avoid removal by "artfully pleading" his claims to omit references to preemptive federal law. *Hyles* at 1215. We also stated: "Even if the plaintiff's complaint does not refer to federal law, the case may be removed if federal law preempts completely the state law on which it relies and 'supplants' the state claim with a federal claim." *Id.* (citation omitted).

In *Sullivan,* we identified another category of cases that fell within the artful pleading doctrine. Based on the Supreme Court's decision in *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), we concluded in *Sullivan* that a plaintiff's state law complaint is "artfully pleaded" when it is drafted to avoid stating allegations or claims already resolved against the plaintiff by a prior federal judgment. *Sullivan,* 813 F.2d at 1376. Thus, when a state law complaint is "artfully pleaded," the district court may exercise removal jurisdiction to determine the preclusive effect to which the prior federal judgment is entitled. *See id.* This result occurs because the preclusive effect to be given a federal judgment is always a question of federal law. *See id.*

In the present case, the district court applied the artful pleading doctrine by relying upon the claim preclusive effect of its order dismissing the 1986 complaint. But the district court lacked jurisdiction to dismiss the 1986 complaint. It was required by 28 U.S.C. § 1447(c) to remand that case back to state court. Ethridge's appeal from the order dismissing the 1986 complaint was pending when the district court dismissed his 1987 complaint. It would be the height of alchemy to permit the erroneous 1986 dismissal order to transform the order dismissing the 1987 complaint into a valid order, when the invalidity of the 1987 order, absent the invalid 1986 order, would be clear. We will not permit the artful pleading doctrine to be used to accomplish such an absurd result. *See Sullivan,* 813 F.2d at 1372 ("[W]e will invoke the [artful pleading] doctrine 'only in exceptional circumstances as it raises difficult issues of state and federal relationships and often

yields unsatisfactory results.' " (citation omitted)).

### 2. ERISA Preemption

 In paragraph 21 of his 1987 complaint, Ethridge stated a claim for tortious discharge and asserted that

> [t]he above said [wrongful] acts of Defendants, was a substantial factor in causing damage and injury to Plaintiff, including loss of employment and *benefits* together with prejudgment interest thereon, loss of dignity and security, emotional distress, and all other damages flowing therefrom.

Based on the word "benefits," which appears only once in Ethridge's complaint, Harbor House asserted removal jurisdiction on the ground of preemption by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. ("ERISA"). The district court rejected Harbor House's argument and so do we. Notwithstanding the strong preemptive force of ERISA, Ethridge's complaint cannot reasonably be read as stating a claim within the scope of ERISA. *See, e.g., Mackey v. Lanier Collections Agency & Serv., Inc.,* —— U.S. ——, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a). We have said that the statutory phrase "State laws" extends to "state common-law causes of action as well as state regulatory statutes, and that claims brought under state-law doctrines that do not explicitly refer to employee benefit plans are nonetheless preempted when the claims arise from the administration of such plans." *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1504 (9th Cir.1985) (collecting cases); *see also Clorox Co. v. United States Dist. Court,* 779 F.2d 517, 519 (9th Cir.1985).

Thus, it is not a barrier to ERISA preemption that Ethridge's complaint relies on state common law causes of action and does not refer to an employee benefit plan. The crucial inquiry in this case is whether Ethridge's claim for wrongful termination "relates to" a covered plan. Read as a whole, and giving due regard to the expansive interpretation Congress intended for the phrase "relates to," *e.g., Mackey,* —— U.S. at ——, 108 S.Ct. at 2185; *Sorosky v. Burroughs Corp.,* 826 F.2d 794, 799 (9th Cir.1987) ("Congress intended that the words 'relate to' be interpreted broadly."), Ethridge's claim for tortious discharge is not within the preemptive scope of ERISA.

For purposes of ERISA-preemption, "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Mackey,* —— U.S. at ——, 108 S.Ct. at 2185 (emphasis deleted) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983)); *Sorosky,* 826 F.2d at 799–800; *Howard v. Parisian, Inc.,* 807 F.2d 1560, 1563 (11th Cir.1987). Nevertheless, even though "ERISA preempts all state laws insofar as they apply to employee benefit plans even if those laws do not expressly concern employee benefit plans and amount only to indirect regulation of such plans,.... some state laws affect employee benefit plans too tenuously to be characterized fairly as relating to employee benefit plans." *Howard,* 807 F.2d at 1564. Consequently, we have concluded that ERISA preempts only those state law claims that arise out of the administration of a covered plan. *See, e.g., Sorosky,* 826 F.2d at 800 (claim for wrongful discharge/breach of contract preempted by ERISA because plaintiff's theories went to administration of plan); *Clorox,* 779 F.2d at 521 (plaintiff's claims that employer wrongfully and maliciously denied employment benefits preempted by ERISA); *Scott,* 754 F.2d at 1504 (state law claims that arise from the administration of covered plans are preempted); *accord Howard,* 807 F.2d at 1564.

Ethridge's claim for tortious discharge seeks recovery for lost "benefits." Harbor House has a covered plan. Harbor House,

however, does not argue that Ethridge was a participant in the plan or that the plan will bear the burden of paying any recovery obtained by Ethridge. Nowhere does Ethridge suggest that "the reasons given by his employer for termination were pretextual and ... [that] the true purpose of his discharge was to deprive him of pension rights." *Rose v. Intelogic Trace, Inc.,* 652 F.Supp. 1328, 1330 (W.D.Tex.1987). We agree with those courts which have held that "[n]o ERISA cause of action lies ... when the loss of pension benefits was a mere consequence of, but not a motivating factor behind, the termination of benefits." *Id.; see also Titsch v. Reliance Group, Inc.,* 548 F.Supp. 983, 985 (S.D.N.Y.1982), *aff'd mem.,* 742 F.2d 1441, (2d Cir.1983).

We do not agree with Harbor House that our *Clorox* decision compels a different result. The complaint in *Clorox* stated claims for "loss of salary and benefits due to wrongful termination, misrepresentation of intent to pay disability benefits, negligent administration of Clorox's employee benefit plan, and malicious conduct in terminating employment and benefits." *Clorox,* 779 F.2d at 519. Ethridge's 1987 complaint states a claim for tortious discharge resulting in loss of salary and "benefits." In *Clorox,* we concluded that ERISA preempted the claim for wrongful denial of benefits. This followed from our earlier cases holding that ERISA preempts state claims involving improper handling of claims for benefits. *Id.* at 521. We then stated, in language that is relevant to this case, "The district court may exercise *pendent* jurisdiction over Stower's state claim for wrongful discharge and malicious termination of benefits." *Id.* (emphasis added).

Giving the phrase "relates to" its common-sense construction, we agree with the district court that Ethridge's claim for tortious discharge is not preempted by ERISA simply because Ethridge sought to recover lost salary and benefits. There is no sense in which Ethridge's complaint can be said to "relate to" a covered plan or its administration. ERISA-preemption did not provide a basis for the exercise of removal jurisdiction over the 1987 complaint.

## V

### CONCLUSION

The district court lacked subject matter jurisdiction over the removed 1986 complaint. District courts do not have original jurisdiction or removal jurisdiction of actions for retaliatory discharge under sections 7 and 8 of the NLRA. Actions that actually or arguably are protected or prohibited by the NLRA fall within the NLRB's primary jurisdiction to adjudicate. District courts may not take removal jurisdiction over a case within the NLRB's exclusive jurisdiction for the limited purpose of dismissing the case to protect the jurisdiction of the NLRB. The question of *Garmon*-preemption must be decided in the first instance by the state courts, subject to appeal to the United States Supreme Court. In the present case, the district court lacked jurisdiction to dismiss the 1986 complaint; lacking jurisdiction, it should have remanded the action to the state court. We therefore reverse the order of dismissal and remand the 1986 action to the district court with instructions to remand it to the state court.

There also was no basis for the exercise of removal jurisdiction over the 1987 action. The "artful pleading" doctrine did not provide a basis for jurisdiction. ERISA does not preempt Ethridge's claim for tortious discharge. We therefore reverse the order of dismissal of the 1987 complaint and remand that case to the district court with instructions to remand it to the state court.

REVERSED AND REMANDED.