**REVISED**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 95-30524
_____

MARY ANNA RIVET, MINNA
LEE WINER, EDMOND G.
MIRANNE, and EDMOND G.
MIRANNE, JR.,

                                        Plaintiffs-Appellants,


                        versus


REGIONS BANK, WALTER L.
BROWN, PERRY S. BROWN,
and FOUNTAINBLEAU STORAGE
ASSOCIATES,

                                        Defendants-Appellees.

_____

Appeal From the United States District Court
for the Eastern District of Louisiana
_____

March 13, 1997


Before JONES and WIENER, Circuit Judges, and FURGESON,[*] District
Judge.

WIENER, Circuit Judge:


    Plaintiffs-Appellants Mary Anna Rivet, Mina Lee Winer, Edmond

G. Miranne, and Edmond G. Miranne, Jr. (collectively, the

_____

    [*] District Judge of the Western District of Texas, sitting by
designation.

Mirannes)[2] appeal the district court's order refusing to remand their case to the Louisiana state court from which it had been removed by Defendants-Appellees Regions Bank, Walter L. Brown, Perry S. Brown, and Fountainbleau Storage Associates (FSA) (collectively, the defendants). The Mirannes also appeal the district court's grant of the defendants' motions for summary judgment dismissing that action. Concluding that the district court correctly denied remand under the "artful pleading" exception to the well-pleaded complaint doctrine, we affirm the refusal to remand the Mirannes' suit to state court; and, agreeing that summary judgment of dismissal was providently granted on the basis of claim preclusion, we affirm.

## I.

### FACTS AND PROCEEDINGS

This action concerns the viability of a $5,000,000 second mortgage on the interest of the lessee (leasehold estate)[3] in a parcel of immovable property (leased premises) located at the intersection of Tulane and Carrolton Avenues in New Orleans,

---

[2] Edmond G. Miranne and Mary Anna Rivet are husband and wife, and Edmond G. Miranne, Jr. and Minna Lee Winer are husband and wife.

[3] "Leasehold estate" is a term unknown to the Civil Law, which does not recognize estates in land. See A.N. Yiannopoulos, 2 Louisiana Civil Law Treatise § 226 at 422-23 (3d ed. 1991). In Louisiana, a lease of immovable (real) property is a personal (in personam) contract which does not create rights in rem; however, under provisions of various statutes, both predial (real estate) and mineral leases are afforded some of the attributes of rights in rem, notably the protection of the public records doctrine, including the susceptibility of the rights of the lessee to conventional (real estate) mortgages and the ranking of such encumbrances among themselves based on time of recordation. See id., at 424-25, and also La. Rev. Stat. Ann. §§ 2721 & 2754-56 (West 1991).

Louisiana.[4]  In 1957, Lois Stern as lessor granted a ground lease of the leased premises to Pelican State Hotel Corporation as lessee.  As a result of several subsequent assignments, the leasehold estate was eventually acquired by Tulane Hotel Investors Limited Partnership (THILP) on September 15, 1983.  On the same date, THILP granted a collateral mortgage (first mortgage) encumbering the leasehold estate to secure a $15,000,000 collateral mortgage note, which in turn was pledged as collateral on a loan from First Financial Bank (FFB).[5]  In May of the following year, THILP granted another collateral mortgage (second mortgage) on the leasehold estate, this one to secure a $5,000,000 collateral mortgage note pledged to and held by the Mirannes.[6]

In 1985, little more than a year after granting the second mortgage, THILP filed for protection under Chapter 11 of the Bankruptcy Code.  The bankruptcy was later converted to a Chapter 7 proceeding and a trustee was appointed.  In the spring of 1986, the trustee applied for court approval to sell the leasehold estate at public auction, free and clear of essentially all encumbrances,

---

[4] The location of the leased premises is a legendary one to many New Orleanians.  For years the property was the site of Pelican Stadium, the home field of the old New Orleans Pelicans minor league baseball team.

[5] See Max Nathan, Jr., The Collateral Mortgage, Logic and Experience, 49 La. L. Rev. 39 (1988), for a discussion of the collateral mortgage, that unique Louisiana "hybrid security device, combining the elements of both pledge and mortgage." Id. at 39-40.

[6] One of the holders of the note, Edmond G. Miranne, Jr., also appears to have been a partner of THILP.

specifically including the second mortgage.[7]  The bankruptcy court issued an order advising all creditors and parties in interest who might oppose the proposed sale to serve any objections to the sale on the trustee and file such objections with the court by June 12, 1986.  The court also set June 16, 1986 as the date for a hearing on the trustee's application.  At the hearing, plaintiff Edmond G. Miranne, Jr., an attorney-at-law, appeared on behalf of himself, pro se, and his father, plaintiff Edmond G. Miranne, as holders of the note secured by the second mortgage.  Their respective wives, plaintiffs Minna Lee Winer and Mary Anna Rivet, did not appear in person; neither were they identified by name as being represented by Miranne, Jr.

On the day after the hearing, the bankruptcy court granted the sale application and ordered that the leasehold estate be sold free and clear of virtually all liens and encumbrances, expressly identifying the second mortgage held by the Mirannes as one of the myriad encumbrances to be canceled.  As no appeal was taken from that order, the trustee proceeded with the public auction of the leasehold estate.  At the auction, FFB, the holder of the first mortgage, submitted the only bid.  Approximately two months later, the bankruptcy court approved the auction results, directed that the sale of the leasehold estate to FFB be consummated, and ordered the Recorder of Mortgages for Orleans Parish to cancel the liens and encumbrances listed, which expressly included the second

---

[7] At this point, the leasehold estate consisted principally of the Bayou Plaza Hotel, formerly known as the Fountainbleau Hotel.

mortgage held by the Mirannes. Despite the bankruptcy court's order, however, the second mortgage was, for some as yet unexplained reason, never canceled and remained inscribed on the public records of Orleans Parish.

Secor Bank eventually succeeded FFB as owner of the leasehold estate. In December 1993, Defendants-Appellees Walter L. Brown and Perry S. Brown, successors-in-interest to the original lessors, sold the leased premises to Secor, thereby vesting Secor with perfect ownership of the leased premises.[8] Later the same day, Secor in turn conveyed its newly acquired full ownership in the leased premises to FSA, which remained the record owner as of the commencement of the instant litigation. Secor was thereafter succeeded by Regions.

A year later, the Mirannes filed this suit in Louisiana state court against the defendants, alleging that the December 1993 transactions — in which the Browns conveyed their interest in the leased premises to Secor (which already owned the leasehold estate), and Secor in turn conveyed the leased premises in full ownership to FSA — had the net effect of canceling the lease and thereby abrogating the Mirannes' purported rights under the second mortgage which, they alleged, still encumbered the leasehold

---

[8] Under Louisiana Civil Code Article 1903, an obligation may be extinguished by "confusion" when the qualities of obligee and obligor are united in the same person. Thus when a lessor's interest and a lessee's interest in the same immovable property are consolidated in the same person, the lease ceases to exist and the person vested with both interests will hold perfect or full ownership — essentially the equivalent of "fee simple" title in the common law. See Ranson v. Voiran, 146 So. 681, 682 (La. 1931).

estate.  The Mirannes sought (1) to have the second mortgage recognized and enforced, via ordinaria, against the immovable property located on the leased premises, or (2) alternatively, damages.  In their complaint, the Mirannes assiduously avoided any hint of the previous bankruptcy proceedings and orders affecting the leased premises, the leasehold estate, and their second mortgage against it.

The defendants removed the case to federal district court, asserting federal question jurisdiction on the theory that the 1986 bankruptcy court orders expressly extinguished the Mirannes' rights under the second mortgage.  Following removal, Regions and FSA filed motions for summary judgment asserting, inter alia, claim preclusion based on the bankruptcy court's orders.  The Browns also filed for summary judgment adopting Regions and FSA's claim preclusion defense and asserting, as a separate and independent basis for dismissal, the Mirannes' failure to state a cause of action against the Browns.  More or less simultaneously, the Mirannes sought remand, contending that the bankruptcy court orders at most provided defendants with an affirmative defense and thus could not confer removal jurisdiction.  The district court denied the Mirannes' motion to remand, relying primarily on the principles announced by this court in <u>Carpenter v. Wichita Falls Independent School District</u>.[9]  At the same time, the court granted summary judgment in favor of FSA and Regions on claim preclusion grounds, and in favor of the Browns on their separate and independent

_____

[9] 44 F.3d 362 (5th Cir. 1995).

grounds.  The Mirannes timely filed a notice of appeal from these rulings.

## II.

## ANALYSIS

### A. Removal Jurisdiction —— Basic Principles

We have recently reviewed the well established principles governing federal question removal jurisdiction.[10]  The denial of a motion to remand an action removed from state to federal court presents a question of federal subject matter jurisdiction and statutory construction which we review <u>de novo</u> on appeal.[11]  As a defendant's use of the removal statute[12] deprives a state court of a case properly before it and thereby implicates concerns of federalism, that statute must be strictly construed.[13]  It follows that the defendant who seeks to sustain removal must also bear the burden of establishing federal jurisdiction over the subject matter of the state court suit.[14]

As a general proposition, removal hinges on whether a federal district court could have asserted original jurisdiction over the state court action had it initially been filed in federal court.[15]

---

[10] <u>See id.</u> at 365-67.

[11] <u>Garrett v. Commonwealth Mortgage Corp. of America</u>, 938 F.2d 591, 593 (5th Cir. 1991).

[12] 28 U.S.C. § 1441.

[13] <u>Carpenter</u>, 44 F.3d at 365-66.

[14] <u>Id.</u> at 365.

[15] <u>See</u> 28 U.S.C. § 1441(a).

7

When a defendant seeks to remove a state court suit on the basis of federal question jurisdiction, as was the case here, removal will be appropriate only if the action is one "arising under the Constitution, laws or treaties of the United States."[16] In most cases, a defendant's assertion of federal question removal jurisdiction will rise or fall on the allegations in the plaintiff's "well-pleaded complaint,"[17] that is, on whether "there appears on <u>the face of the complaint</u> some substantial, disputed question of federal law."[18] This means that the defendant must predicate his assertion of federal jurisdiction on the allegations of the plaintiff's claim, not, for example, on the basis of an anticipated or even an inevitable federal defense.[19] As Justice Cardozo succinctly put it, the defendant must show that a federal right is "an element, and an essential one, of the plaintiff's cause of action."[20]

## B. Artful Pleading Exception ⸺ Federal Res Judicata

Federal courts have over the years created but a few narrow exceptions to the fundamental precept of the well-pleaded complaint

---

[16] 28 U.S.C. §§ 1331 & 1441(b).

[17] <u>Carpenter</u>, 44 F.3d at 366 (citing <u>Louisville & Nashville R. Co. v. Motley</u>, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

[18] <u>Carpenter</u>, 44 F.3d at 366 (citing <u>Franchise Tax Board v. Construction Laborers Vacation Trust</u>, 463 U.S. 1, 12, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983)) (emphasis added).

[19] <u>Carpenter</u>, 44 F.3d at 366.

[20] <u>Gully v. First Nat'l Bank</u>, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

doctrine that "[t]he plaintiff is master of her complaint."[21] The common rationale for these jurisprudential exceptions — euphemistically known by the cynically sarcastic sobriquet of the "artful pleading exception" — is that when a plaintiff has available "no legitimate or viable state cause of action, but only a federal claim, he may not avoid removal by artfully casting his federal suit as one arising exclusively under state law."[22]

The first and best known specie of artful pleading is the one that arises when the area of state law upon which a plaintiff's claim is based has been "completely pre-empted" by federal law; i.e., when the "pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"[23] Only a few types of claims have been held to be "completely pre-empted," though — most notably those preempted

_____

[21] Carpenter, 44 F.3d at 366.

[22] Id.  We note that another jurisprudentially created doctrine, more frankly labeled "fraudulent joinder," supports the assertion of removal jurisdiction on the basis of diversity of citizenship when a plaintiff's well-pleaded complaint would not otherwise allow removal because of the joinder of a non-diverse defendant.  Even though we give great deference to the allegations found in the plaintiff's state court complaint, we will nevertheless examine the questioned joinder of a non-diverse defendant and hold it to be fraudulent under this doctrine when there is no possibility of recovery against that party.  See Dodson v. Spillada Maritime Corp., 951 F.2d 40, 42 (5th Cir. 1992); Carriere v. Sears Roebuck and Co., 893 F.2d 98, 100 (5th Cir. 1990).  The parallel between the fraudulent joinder exception and the artful pleading exception should be obvious.

[23] Caterpillar, Inc. v. Williams, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)).

by Section 302 of the Labor Management Relations Act of 1947 or by Section 502 of the Employment Retirement Income Security Act of 1974.[24]

A second and somewhat rarer specie of artful pleading that justifies an exception is the one exemplified by the case we consider today, as illustrated in Federated Department Stores v. Moitie[25] — claim preclusion or res judicata. In Moitie, seven plaintiffs had filed and lost a consolidated antitrust suit in federal court.[26] Five of the seven plaintiffs appealed the district court decision, but two (Brown and Moitie) elected to file almost identical second suits (Brown II and Moitie II) in state court, facially based exclusively on state law. After the defendants removed these two state court suits, Brown and Moitie sought remand to state court. The district court first denied Brown's and Moitie's motions to remand, finding that their state court actions "were properly removed to federal court because they raised 'essentially federal law' claims," then dismissed the claims on res

---

[24] See Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n. of Machinists, 390 U.S. 557, 559, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968) (§ 302 of LMRA); Metropolitan Life, 481 U.S. at 65-66 (§ 502 of ERISA).

[25] 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).

[26] Six of the plaintiffs had originally filed their suits in federal court, and one plaintiff who originally filed suit in state court saw his action removed to federal court on federal question and diversity jurisdiction grounds. The district court found that all of the plaintiffs had failed to allege an "injury" to their "property or business" within the meaning of §4 of the Clayton Act, 15 U.S.C. § 15. Id. at 395-96.

judicata grounds.[27]

In the meantime, the Ninth Circuit had ruled in favor of the other original federal plaintiffs — the five who had appealed their district court losses — based on a supervening Supreme Court decision that had worked a substantive change in pertinent antitrust law. Consequently, when the two state court plaintiffs, Brown and Moitie, appealed the district court's denial of their motions to remand and its subsequent dismissals for res judicata, the Ninth Circuit reversed the district court on the merits of its res judicata determination, but — importantly — only after affirming the district court's assertion of removal jurisdiction and denial of remand.[28] The Supreme Court then granted certiorari to consider, specifically, the preclusion issues raised by the Ninth Circuit's res judicata analysis.[29]

Although the Supreme Court's decision was primarily focused on the substantive preclusion issues thus presented, the Court, of necessity, also affirmed the district courts' original assertion of removal jurisdiction over Brown II and Moitie II and the Ninth Circuit's affirmance of that jurisdiction. In a lengthy footnote, the Court stated:

> The Court of Appeals also affirmed the District Court's conclusion that Brown II was properly removed to federal court, reasoning that the claims presented were "federal

---

[27] Id. at 396–97.

[28] Id. at 397–98.

[29] Id. at 398 ("We granted certiorari . . . to consider the validity of the Court of Appeals' novel exception to the doctrine of res judicata.").

11

in nature." <u>We agree that at least some of the claims had a sufficient federal character to support removal</u>. As one treatise puts it, courts will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum . . . [and that] occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization. 14 C. Wright, A. Miller, & E. Cooper, <u>Federal Practice and Procedure</u> § 3722, pp 564-566 (1976) (citing cases) (footnote omitted). The District Court applied that settled principle to the facts of this case. . . . We will not question here that factual finding.[30]

Regrettably, the Supreme Court did not explain precisely what there was about the plaintiffs' state law claims that was so "federal in nature" as to support removal under the artful pleading exception.

Even though at least one district court and one commentator have suggested that <u>Moitie</u> should be disregarded either as an aberration that has never been confirmed by the Supreme Court or as an injudicious application of an already suspect doctrine,[31] the circuit courts have nevertheless attempted, as they must, to find meaning in <u>Moitie</u>'s enigmatic footnote. As it happens, different circuits have articulated one or the other of two distinct rationales for the Supreme Court's use of the artful pleading exception in its approval of the district court's denial of remand in <u>Moitie</u>.

One rationale was offered in <u>Travelers Indemnity Co. v.</u>

---

[30] <u>Id.</u> at 397 n. 2 (emphasis added).

[31] <u>See</u> <u>Magic Chef, Inc. v. Int'l Molders & Allied Workers Union</u>, 581 F.Supp. 772, 776 n. 4 (E.D. Tenn. 1983 (claiming that <u>Moitie</u>'s value as authority regarding removal jurisdiction was superseded by the Supreme Court's opinion in <u>Franchise Tax Bd.</u>, which was written by Justice Brennan, a vocal dissenter in <u>Moitie</u>, and which does not cite <u>Moitie</u> at all); Robert A. Ragazzo, <u>Reconsidering the Artful Pleading Doctrine</u>, 44 Hastings L.J. 273, 303-315 (1993).

Sarkisian,[32] in which the Second Circuit interpreted Moitie to permit removal whenever a plaintiff files a complaint based on federal law in federal court and subsequently files an ostensible state law claim in state court containing essentially the same elements. Consistent with the well-pleaded complaint doctrine, this "election of forums" or "consent" rationale recognizes in essence that a plaintiff remains the master of his complaint, but engrafts on this doctrine the limitation that the plaintiff is allowed but one opportunity to characterize his claims.[33]

Reasoning that the Second Circuit's "election of forums" rationale would lead to an unwarranted and excessive expansion of federal removal jurisdiction, the Ninth Circuit, in Sullivan v. First Affiliated Securities, Inc.,[34] concluded that Moitie is better explained as permitting removal of only those subsequent state court claims that are barred by the res judicata effect of a prior federal judgment.[35] As the Ninth Circuit later put it, a plaintiff's state law claim may be classified as "'artfully pleaded' when it is drafted to avoid stating allegations or claims

---

[32] 794 F.2d 754, 760-61 (2nd Cir.), cert. denied, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986).

[33] See Ragazzo, 44 Hastings L.J. at 307-308.

[34] 813 F.2d 1368, 1374-75 (9th Cir.), cert denied, 484 U.S. 850, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987) (critiquing the election of forums rationale as applied in Sarkisian and as discussed in dicta of an earlier Ninth Circuit decision, Salveson v. Western States Bankcard Ass'n, 731 F.2d 1423 (9th Cir. 1984)).

[35] Id. at 1376 ("We therefore construe Moitie as limited to removal of state claims precluded by the res judicata effect of a federal judgment.").

13

already resolved by a prior federal judgment."[36]  In a number of subsequent cases, the Ninth Circuit, as well as other circuits, have endorsed Sullivan's articulation of this "federal res judicata" rationale for Moitie and have applied Sullivan's principles, all the while recognizing that this additional branch of the artful pleading exception must be used sparingly, in the narrow and exceptional circumstances described by Sullivan and Moitie.[37]

In Carpenter v. Wichita Falls Ind. School District,[38] a panel of this court squarely confronted the same interpretive issue

---

[36] Ethridge v. Harbor House Restaurant, 861 F.2d 1389, 1403 (9th Cir. 1988); see also Clinton v. Acequi, Inc., 94 F.3d 568, 571 (9th Cir. 1996) (stating that Ninth Circuit has consistently "found the artful pleading doctrine to support removal where a plaintiff files his state law claims in state court in an attempt to circumvent the res judicata effect of a prior federal claim that has been reduced to judgment").

[37] See e.g., Ultramar American Limited v. Dwelle, 900 F.2d 1412, 1415 (9th Cir. 1990) (acknowledging that Sullivan recognized a new basis for invoking the artful pleading doctrine but noting that recharacterization of a state court claim under the res judicata branch of the doctrine may only occur when prior federal judgment resolved issues of federal not state law); Doe v. Allied-Signal, Inc., 985 F.2d 908, 912 (7th Cir. 1993) (recognizing Ultramar distinction but also finding that removal was improper because no res judicata was present); Ethridge, 861 F.2d at 1403 (endorsing Sullivan but finding that removal was improper because federal court lacked subject matter jurisdiction over complaint in prior and allegedly preclusive federal action); Redwood Theaters, Inc. v. Festival Enterprises, Inc., 908 F.2d 477, 480 (9th Cir. 1990) (applying Sullivan rule but holding that removal was improper because plaintiff's claim had never previously been before a federal court and no res judicata defense was available to defendants).

[38] 44 F.3d 362 (5th Cir. 1995).

14

presented to the Ninth Circuit by <u>Sullivan</u>.[39]  Explicitly rejecting the Second Circuit's expansive election of forums approach and agreeing with the Ninth Circuit's "narrower interpretation,"[40] we concluded in <u>Carpenter</u> that the "federal character" of the plaintiffs' claims justifying removal in <u>Moitie</u> must be found in the federal law of preclusion.[41]  In so doing we were careful to reiterate our continuing confidence that state courts would comply with their Supremacy Clause obligation to apply federal rules of res judicata.[42]

In addition, we emphasized our awareness that defendants in state court suits frequently have the option of employing the relitigation exception to the Anti-Injunction Act,[43] as an alternative approach to disposing of a state court suit that is precluded by a prior federal judgment.  The fact that a defendant could seek to enjoin a state court action and thereby, if successful, achieve the same result that he might have obtained had

---

[39] In <u>Carpenter</u>, the plaintiff, a school administrator, filed two separate suits against the school district she worked for —— one in federal court alleging violations of her free speech rights under the First Amendment to the United States Constitution and one in state court stating a state contract claim and a free speech claim exclusively under the Texas Constitution.  44 F.2d at 365. Similarly, <u>Sullivan</u> involved a federal action under federal securities law and another similar and simultaneous action in state court under state securities law. 813 F.2d at 1370.

[40] <u>Carpenter</u>, 44 F.3d 369 n. 6, 370 n. 12.

[41] <u>Id.</u> at 370.

[42] <u>Id.</u>

[43] 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a state court except . . . <u>to protect or effectuate its judgments</u>.") (emphasis added).

15

he instead sought to remove and dismiss the suit under Moitie, does not, Judge Garwood expressly observed in Carpenter, render Moitie superfluous. Rather, Judge Garwood went on to explain, the co-extensive nature of the relitigation exception to the Anti-Injunction Act on the one hand and the artful pleading exception to the well-pleaded complaint doctrine — based on Moitie's federal res judicata grounds — on the other hand simply suggests that "any potential impact on federalism from removal [in Moitie] was not significant."[44] In thus clearly setting forth the rule for this circuit, the Carpenter panel concluded by stating that:

> [w]e hold that Moitie should apply only where a plaintiff files a state cause of action completely precluded by a prior federal judgment on a question of federal law.[45]

Returning to the case now before us, we conclude that the district court properly reasoned that Carpenter's holding provides the sole framework for analyzing the jurisdictional issues raised by the Mirannes' thinly veiled collateral attack on the bankruptcy court's prior orders. The fact that in Carpenter the federal res judicata artful pleading rationale did not, in the end, support removal under the specific circumstances of that case — there was no prior federal case and no prior federal judgment, just two simultaneously filed suits, one based on federal law and one scrupulously — "artfully" — based solely on state law — does not, as the Mirannes now contend, render Judge Garwood's carefully articulated holding in Carpenter dicta. To the contrary, and just

---

[44] Id.

[45] Id. (emphasis added).

16

as the district court here found, <u>Carpenter</u> controls. Accordingly, if the defendants can show that the Mirannes' state court suit, purportedly brought to enforce their erstwhile second mortgage, is in fact barred by the claim preclusive effects of the bankruptcy court's 1986 orders that authorized and approved the sale of the leasehold estate free and clear of that mortgage and mandated its cancellation, then the district court's denial of the Mirannes' motion to remand, and its dismissal of their suit for essentially the same reason, must be affirmed.

**C. The Bankruptcy Court's 1986 Orders**
   **Bar the Mirannes' Present Suit**

Under the "pure" res judicata or claim preclusion rubric as developed in this circuit, a prior judgment will operate to preclude a later filed suit if four elements are present: (1) The parties in the later action are identical to, or at least in privity with, the parties in the prior action; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action concluded with a final judgment on the merits; and (4) the same claim or cause of action is involved in both actions.[46] As we find beyond peradventure that all four elements subsist in the instant case, we conclude, just as did the district court, that the claims presented by the Mirannes' subsequent state court action, ostensibly seeking to enforce their second mortgage, are in fact precluded by the bankruptcy court's 1986 orders.

---

[46] <u>United States v. Shanbaum</u>, 10 F.3d 305, 310 (5th Cir. 1994).

17

*1. Identity and Privity of the Parties*

The bankruptcy court's order authorizing the sale of the leasehold estate reflects that Edmond G. Miranne Jr., an attorney-at-law, appeared in court on the previous day, both pro se and as counsel for his father, in connection with the pending sale application by the trustee. The fact that the Mirannes' wives, Rivet and Winer,[47] did not personally appear and were not expressly identified by Miranne Jr. as parties that he represented, is of no significance. We have previously held that one individual's participation in a bankruptcy proceeding may bind a non-party, such as a spouse, whose interests are closely aligned with and adequately represented by the person who did appear.[48] Here, Rivet and Winer had interests identical to those of their husbands in the bankruptcy proceeding — namely the preservation (more accurately here, the resurrection) and protection of the second mortgage. In fact, their subsequent state court complaint listed only the husbands as owners of the collateral mortgage note, even though it was presumptively community property under Louisiana law.[49] Consequently, the husbands' participation in the 1986 bankruptcy

---

[47] In Louisiana, married women are entitled to retain and use their maiden names, and frequently do so in legal documents, such as deeds, mortgages, and pleadings, especially in New Orleans and the "country parishes" of South Louisiana. See La. Civ. Code art. 100.

[48] Eubanks v. F.D.I.C., 977 F.2d 166, 170 (5th Cir. 1992).

[49] See La. Civ. Code art. 2340 ("Things in possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property.").

18

proceedings by way of Edmond G. Miranne, Jr.'s appearance at the sale application hearing served as adequate representation of the interests of the spouses in community and was thus no less binding on the wives for claim preclusion purposes than it was on their husbands.[50]

With respect to the defendants, there is no dispute that FFB was a party to the bankruptcy proceedings as holder of the first mortgage and the eventual purchaser of the leasehold estate at the public auction. Neither is there doubt that Regions and FSA are successors-in-interest to FFB with respect to the property affected by the bankruptcy court orders. Again, the rule is well established that a judgment may have claim preclusive effect on a non-party if the non-party is a successor-in-interest to a party's interest in property affected by the judgment.[51] Consequently, both Regions and FSA are bound by the bankruptcy court's orders to the same extent as is their predecessor, First Financial. Accordingly, we conclude that the first element of claim preclusion is clearly satisfied in this case with respect to all four plaintiffs and to

---

[50] Under Louisiana's community property laws, the rule of equal management generally applies to community property; however, the concurrence of both spouses is required for the alienation, encumbrance or lease of community immovables and in other limited situations specified by law. La. Civ. Code arts. 2346-47. As the collateral mortgage note held by the Mirannes is classified as an "incorporeal movable," concurrence of the Mirannes' spouses would not have been required for the husbands to alienate whatever rights flowed from their ownership of the note and the mortgage securing it. See Nathan, 49 La. L. Rev. at 44.

[51] Meza v. General Battery Corp., 908 F.2d 1262, 1266 (5th Cir. 1990); Howell Hydrocarbons, Inc. v. Adams, 897 F.2d 183, 188 (5th Cir. 1990).

defendants Regions and FSA.[52]

*2. A Court of Competent Jurisdiction and A Final Judgment*

The second and third claim preclusion elements are also present in the instant case. As a general proposition, district courts have jurisdiction over cases or civil proceedings arising under Title 11, or arising in or related to cases under Title 11.[53] It follows that a district court has jurisdiction to authorize and approve a trustee's sale.[54] Indeed, a proceeding to sell property free and clear of liens pursuant to 11 U.S.C. § 363(b) and (f) is a core proceeding in which the bankruptcy court has jurisdiction to issue final orders and judgments.[55] Here the proposed sale of the leasehold interest arose under and was related to THILP's chapter 7 bankruptcy case. Consequently, the bankruptcy court had jurisdiction to consider the Trustee's sale application and to issue the ensuing orders (1) authorizing the sale of the leasehold estate free and clear of specified junior liens, expressly including the second mortgage held by the Mirannes, and (2) approving that sale and directing the cancellation of those specified inferior encumbrances.

---

[52] We acknowledge that this first condition of claim preclusion cannot be satisfied with respect to the Browns, but we dispose of the jurisdictional wrinkle raised by this fact below. See infra Part E.

[53] 28 U.S.C. § 1334(a),(b).

[54] Southmark Properties v. Charles House Corp., 742 F.2d 862, 870 (5th Cir. 1984); In re Heine, 141 B.R. 185, 187 (Bank. D.S.D. 1992); see also Matter of Baudoin, 981 F.2d 736, 740 (5th Cir. 1983) (recognizing wide reach of jurisdiction under Title 11).

[55] 28 U.S.C. § 157(a),(b)(2)(N); Heine, 141 B.R. at 188.

20

Although they characterize the bankruptcy court's sale orders as actions beyond the "power" of the bankruptcy court under the rules and provisions of the Bankruptcy Code,[56] the Mirannes' authority for this proposition does not comport with Congress' jurisdictional grant to the district court —— and its adjunct, the bankruptcy court —— to determine whether property of a debtor should be sold free and clear of liens and encumbrances. The Mirannes, of course, were entitled to question whether the bankruptcy court properly exercised the powers granted to it by 11 U.S.C. § 363 in the particular circumstances of this case. This kind of substantive —— but not jurisdictional —— objection to a bankruptcy court's orders, however, is one that had to have been timely raised either in an appeal or a motion for reconsideration, not eight years after the fact in a state court collateral attack on those orders. We reject out of hand the Mirannes' specious contention that, for claim preclusion purposes, the bankruptcy court lacked jurisdiction to issue the 1986 sale orders.

In addition, an order by a bankruptcy court authorizing or approving the sale of an asset of the bankrupt estate is a final judgment on the merits for res judicata purposes even if the order neither closes the bankruptcy case nor disposes of any claim.[57]

---

[56] Appellants principally contend that the bankruptcy court order extinguishing the second mortgage was invalid because the order did not result from an adversary proceeding as required by Fed. R. Bank. Proc. 7001 and because the court did not satisfy the provisions of § 363(f)(1)-(5).

[57] Matter of Baudoin, 981 F.2d at 742; Hendrick v. Avent, 891 F.2d 583, 586 (5th Cir.), cert. denied, 498 U.S. 819, 111 S.Ct. 64, 112 L.Ed.2d 39 (1990); Southmark Properties, 742 F.2d at 870.

21

Therefore, there can be no serious question that the bankruptcy court's 1986 orders authorizing and approving the sale of the leasehold estate free and clear of essentially all liens and encumbrances were final judgments capable of precluding the Mirannes' later filed state court collateral attack. It is equally beyond serious question that these final judgments affected issues of federal law: Bankruptcy is a quintessential federal question.

*3. The Same Cause of Action*

In conducting our search for the presence of the fourth element required for the applicability of claim preclusion, we employ the transactional test of Section 24 of the Restatement (Second) of Judgments to determine whether the two suits in question involve the same claim for purposes of claim preclusion.[58] Under the "same claim" inquiry, the critical issue is whether the two actions under consideration are based on the same nucleus of operative facts.[59]

In the instant case, we find that both the bankruptcy court's 1986 orders authorizing and approving the sale of the leasehold estate free and clear of the Mirannes' second mortgage and the Mirannes' claims in their state court action are unquestionably based on, and in fact are entirely dependent on, the same nucleus of operative facts — namely, the viability, the validity, the enforceability of the second mortgage. In "artfully" contending

---

[58] Matter of Baudoin, 981 F.2d at 743; Southmark Properties, 742 F.2d at 870-71.

[59] Matter of Baudoin, 981 F.2d at 743.

22

that their putative state cause of action arises solely out of the December 1993 transaction involving the Browns, Secor and FSA, the Mirannes studiously ignore the fact their claim relative to that 1993 transfer can go absolutely nowhere unless they can establish that their second mortgage was alive and well at that time, despite the 1986 bankruptcy court orders that expressly authorized and approved the sale of the leasehold estate free and clear of that mortgage and directed that it be canceled from the mortgage records of Orleans Parish.

Without an extant enforceable mortgage, the Mirannes cannot forthrightly plead either a right of action or a cause of action in state court. Indeed, all of the acts of alleged wrongdoing in the December 1993 transaction are so inextricably intertwined with and dependent on the 1986 bankruptcy orders directing and approving the sale of the leasehold estate free and clear of the second mortgage that we would be hard pressed to conjure up a better hypothetical example of two actions arising from the same nucleus of operative facts. In this regard we remain ever mindful of the basic canon of Louisiana law that the public records do not create rights; the existence of the uncanceled inscription of the second mortgage on the public records could not keep the mortgage itself legally viable after the obligation it secured —— the collateral mortgage note —— as well as the mortgage, were terminated in the bankruptcy of the maker/mortgagor, THILP.

A review of relevant case law applying res judicata principles in the bankruptcy context further confirms our analysis. On one

23

hand, our decisions have consistently held that under the transactional test a final bankruptcy court <u>sale</u> bars any subsequent claims that challenge the finality or integrity of the transfer of title pursuant to that sale.[60]  On the other hand, the Mirannes' reliance on <u>D-1 Enterprises, Inc. v. Commercial State Bank</u>,[61] a case in which we held that res judicata does <u>not</u> apply to claims that were largely unrelated to and which could not have been raised in an earlier bankruptcy proceeding, is inapposite to the instant case.  Unlike the situation in <u>D-1 Enterprises</u>, here the Mirannes had far more than a mere opportunity to object to the sale of the leasehold estate in the bankruptcy court:  They were invited by the court to file their objections; they actually appeared in court at the hearing scheduled for the airing of such objections; and once the court issued its sale order, they could have timely filed either a motion for reconsideration —— or a notice of appeal —— but they did neither.  Given their personal attendance, together with these multiple waived or forfeited opportunities to raise and litigate their objections (if any) to the sale, the Mirannes cannot now contend —— at least not with a straight face ——

---

[60] <u>See</u> <u>Southmark Properties</u>, 742 F.2d at 870-72 (debtor's later filed lender liability action barred by bankruptcy court's order authorizing sale of property in debtor's estate "free and clear of all . . . claims" to secured creditor as both involved "common nucleus of operative facts"); <u>Hendrick</u>, 891 F.2d at 587 (trustee's actions under RICO and securities laws barred by bankruptcy court's sale order authorizing transfer of title of stock against which trustee had launched his collateral action).

[61] 864 F.2d 36 (5th Cir. 1989).

as did the debtor in D-1 Enterprises,[62] that claim preclusion should not be applied because their claim could not have been effectively litigated in the earlier proceeding.

Indisputably, all requisites of claim preclusion are present here, vis-á-vis Regions and FSA. As to these two defendants, therefore, we affirm the district court's refusal to remand the Mirannes' previously removed action under the artful pleading exception to the well-pleaded complaint doctrine.

## D. The "Actually Litigated" Standard

As we noted above, and as this court previously observed in Carpenter, the relitigation exception to the Anti-Injunction Act provides another, entirely independent mechanism which defendants (and the federal courts) may use to protect prior federal court judgments.[63] In Carpenter we reasoned that, as the relitigation exception to the Anti-Injunction Act had "already realigned federal-state relations in favor of the federal courts," Moitie's use of the res judicata branch of the artful pleading exception signified nothing more than that "any potential impact on federalism from removal was not significant."[64] Thus two lessons are to be gleaned from Carpenter: (1) Issues of federalism are not

_____

[62] In D-1 Enterprises, we found that the lender liability claims that debtor sought to assert in the later action were not "direct defenses" that the debtor could or should have litigated in response to the creditor's earlier motion for relief from stay. Id. at 39. Furthermore, D-1 Enterprises also distinguished Southmark in which preclusion was appropriate in the context of a "court-ordered public cash auction." Id.

[63] See supra Part B, and 44 F.3d at 370.

[64] Id.

implicated in this context; and (2) the relitigation exception to the Anti-Injunction Act —— a route that parallels (but is not identical to) removal via the res judicata iteration of the artful pleading exception —— is not the exclusive path available for squelching precluded sequential state court litigation of claims previously litigated in federal court.

Nevertheless, in reliance on the above-quoted limited discussion of how the Anti-Injunction Act co-exists with the federal res judicata interpretation of Moitie, the Mirannes imaginatively contend that the court in Carpenter implicitly incorporated the specific restraints of the relitigation exception into its res judicata artful pleading exception based on Moitie. In particular, they contend that removal under Carpenter is somehow limited by the anti-injunction holding in Chick Kam Choo v. Exxon Corp.[65]  The Mirannes argue that Chick Kam Choo stands for the proposition that injunctions may be issued under the relitigation exception to §2283 only with respect to issues that were "actually litigated" in the prior proceeding —— that is, only in circumstances in which issue —— but not claim —— preclusion would apply in a successive proceeding; and that such a limitation must per force restrict the artful pleading exception to issue preclusion.  This stretch by the Mirannes, in attempting to incorporate an "actually litigated" restriction into Carpenter, is fatally flawed, however.

First, we note that nowhere in Carpenter did we even mention,

_____

[65] 486 U.S. 140, 106 S.Ct. 1684, 100 L.Ed.2d 127 (1988).

26

much less impose, an "actually litigated" standard for removal under the res judicata branch of the artful pleading exception; neither did we so much as refer to <u>Chick Kam Choo</u>, much less cite it as authority. Second, we are aware of no other court that, when applying the federal res judicata manifestation of the artful pleading exception following <u>Sullivan</u>, has seen fit to apply — or even mention — this standard.

But even if we assume, solely for the sake of argument, that an "actually litigated" requirement was imported through <u>Carpenter</u>, we would still find that removal is proper under the circumstances of this case. In <u>Chick Kam Choo</u>, the Supreme Court, relying on <u>Atlantic Coast Line R. Co. v. Locomotive Engineers</u>,[66] stressed that:

> an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings <u>actually have been decided</u> by the federal court. Moreover, Atlantic Coast Line illustrates that this prerequisite is strict and narrow. The court assessed the precise state of the record and what the earlier federal order <u>actually</u> said; it did not permit the District Court to render a post hoc judgment as to what the order was <u>intended</u> to say.[67]

For the bankruptcy court in the instant case to authorize and approve the sale of the leasehold estate free and clear of essentially all liens and encumbrances, that court necessarily had to <u>decide</u> whether the Mirannes' inferior second mortgage could survive as an encumbrance against the leasehold estate after that estate was sold at public auction by the THILP trustee's

---

[66] 398 U.S. 281, 286–287, 90 S.Ct. 1739, 26 L.Ed. 234 (1970).

[67] <u>Chick Kam Choo</u>, 486 U.S. at 148 (emphasis in original).

foreclosure on the superior first mortgage. Indeed, the bankruptcy court's order authorizing sale of the leasehold estate "actually said," inter alia, that (1) Edmond G. Miranne, Jr. appeared on his and his father's behalf, (2) all creditors were given notice and an opportunity to object and be heard, and (3) the sale of the leasehold estate would be free and clear of "all . . . liens, mortgages and encumbrances," including, specifically, the Mirannes' second mortgage. Given Chick Kam Choo's admonition to focus on "what the earlier federal order actually said," not what "the order intended to say" (albeit likely the same thing in this case), it is indisputable that in the 1986 bankruptcy court proceedings the continuing validity of the Mirannes' inferior mortgage was "actually litigated and decided."[68]

## E. Response to Dissent

Although our colleague, Judge Jones, in her thoughtful dissent agrees with our essential holding that Moitie permits removal of state court claims that are barred by the preclusive res judicata effect of a prior federal judgment, she would further limit application of Moitie's res judicata removal avenue to cases in which (1) "the prior judgment . . . involved a claim made under federal law," and (2) "the claim being removed represented a plaintiff's attempt to seek relief in state court by recharacterizing an 'essentially federal' claim they [sic] had unsuccessfully pursued first in federal court."[69] We acknowledge

---

[68] Id. at 149.

[69] Dissent, infra, at 1-2 (emphasis added).

28

the overarching federalism concerns that inform Judge Jones' critique, but we nevertheless find her additional suggested restrictions to our already narrow holdings in Carpenter and in the instant case to be unwarranted. First, the Ninth Circuit decision that Judge Jones cites in support of her additional restrictions, Ultramar American Unlimited v. Dwelle,[70] limits Moitie recharacterization (i.e., removal) to situations "when the prior federal judgment resolved questions of federal law," or "when the prior federal judgment sounded in federal law."[71] It does not, as far as we can discern, purport to constrain Moitie removal to instances in which the prior federal judgment arose out of a case that a plaintiff himself had first brought in federal court. True, that is what happened in Moitie and that may prove to be the most common circumstance in which Moitie removal will occur. But Moitie's sanctioning of removal, as we explained in Carpenter[72] and as the Ninth Circuit has suggested,[73] hinges on the preclusive

---

[70] 900 F.2d 1412 (9th Cir. 1990).

[71] Id. at 1415-16 (emphasis added).

[72] 44 F.3d at 370 ("If there was any federal character at all to the plaintiffs' state law claims in Moitie, it must be the federal law of preclusion.")

[73] In Ultramar, the Ninth Circuit observed that:
The Moitie doctrine seems based on a court divining a litigant's motives for bringing suit. When a litigant suffered a final defeat on a federal claim yet thereafter files a similar-although-not-preempted state claim in state court, the sequence of events gives rise to an inference that the litigant is not interested in the state cause of action per se, but is instead attempting to circumvent the effects of the federal question judgment. In this limited instance, removal is allowed.
900 F.3d at 1417 (emphasis added).

29

effects of a <u>prior federal judgment</u> and a state court litigant's attempts to circumvent them artfully, <u>not</u> on the manner in which the case giving rise to the preclusive federal judgment reached federal court in the first place.

Indeed, we emphasize that the reasons Judge Garwood found in <u>Carpenter</u> that <u>Moitie</u> did not apply to the facts before his panel there were (1) there was no prior federal judgment to protect, (2) there was no federal preclusion law to apply, and (3) the plaintiff in <u>Carpenter</u>, unlike the plaintiffs in <u>Moitie</u>, was "taking preclusion risks in order to have her state law claim heard in its preferred forum" and thus was "not attempting to avoid the effect of a prior judgment."[74] As we have strived to make clear in this opinion, however, in this case we do have a prior federal judgment, we do have federal preclusion law to apply, and we have plaintiffs who have not taken any preclusion risks, but, to the contrary, are clearly seeking by collateral attack to avoid the preclusive effect of a prior federal judgment, long since in repose, that concluded a case in which these plaintiffs had ample opportunity to assert their interests and in fact did assert them. It follows, then, that removal of the plaintiffs' state court collateral attack on the bankruptcy court's final judgment is entirely appropriate in this case, even though the preclusive —— and thus essentially federal —— nature of that federal court judgment derived from the underlying bankruptcy case. Here, the plaintiffs were interested creditors who were invited to assert their rights based on their

_____

[74] <u>Carpenter</u>, 44 F.3d at 371.

second mortgage; there simply was no lawsuit initially filed by these plaintiffs in federal court. Therefore, in spite of Judge Jones' objections, we remain firmly convinced that the Mirannes are not entitled to have their faux foreclosure suit remanded to state court under the well-pleaded complaint doctrine. To do so would make a mockery of that doctrine; the very kind of untoward result that the artful pleading exception — like the fraudulent joinder doctrine — is designed to prevent.

**F. The Final Removal Twist -- Supplemental Jurisdiction**
**Over the Mirannes' Claims Against the Browns**

To complete our analysis of the jurisdictional questions presented by this case, we address one final, relatively minor issue. The Mirannes insist that, even if the district court properly asserted removal jurisdiction as to Regions and FSA and properly denied remand as to those two defendants under the Moitie/Carpenter res judicata artful pleading exception, that court still could not exercise removal jurisdiction over the Mirannes' claims against the Browns. This is so, they urge, because the Browns were not parties to the 1986 bankruptcy proceedings that underlie the preclusion of the Mirannes' subsequent state court suit against FSA and Regions. We disagree. Although we do agree that the Moitie/Carpenter rationale is inapplicable to the Browns, the district court — having properly exercised removal jurisdiction as to the Mirannes' claims against Regions and FSA — could therefore exercise supplemental jurisdiction over the Mirannes' claims against the Browns. These claims clearly formed part of the "same case or controversy" as those against Regions and

31

FSA.[75]   Indeed, we have so found in a similar case involving the complete preemption branch of the artful pleading exception.[76]

Accordingly, we hold that the district court did not err in asserting jurisdiction over each defendant named in the Mirannes' state court complaint, including the Browns.  Neither did  that court err in refusing to remand any of those claims to state court.

**G. Motions for Summary Judgment**

In the foregoing analysis, we determined that the Mirannes' removed state court suit, "artfully" styled as an action to enforce the second mortgage, was in truth nothing but a transparent, "second bite" collateral attack on the bankruptcy court's 1986 orders.   It was a blatant attempt at a "gotcha," grounded exclusively in the purely fortuitous and inadvertent failure of some person or persons unknown to follow-up on the court ordered cancellation of the second mortgage from the public records.  As a result, we concluded that the well-pleaded complaint doctrine did not immunize that second suit from removal.

In like manner, we now hold that the district court properly granted summary judgment in favor of Regions and FSA on the basis of claim preclusion.  Despite its intentionally deceitful garb, the core issue of the Mirannes' subsequent state court complaint was

---

[75] See 28 U.S.C. § 1367.

[76] See Kramer v. Smith Barney, 80 F.3d 1080, 1086 & 1083 n. 1 (5th Cir. 1996) (observing that if plaintiff's state law fiduciary duty claims relating to ERISA governed pension accounts were removable under complete preemption theory, plaintiff's other related, non-ERISA, state law claims were removable as supplemental claims under § 1367).

the efficacy of the final, executory, non-appealable orders of the bankruptcy court that had freed the leased premises from, inter alia, the Mirannes' second mortgage. As that issue was and remains res judicata, we affirm the district court's summary judgment in favor of Regions and FSA.

We also affirm the district court's grant of summary judgment in favor of the Browns albeit we do so on the separate and independent ground that the Mirannes failed to establish any legal basis or triable issue of fact to support a claim against the Browns. As the district court observed, the Mirannes first acknowledged that the Browns did not participate in the prior bankruptcy proceedings, thereby casting doubt on whether the Browns could be held responsible for the Mirannes' loss of rights as a result of those proceedings. In addition, the Mirannes also characterized their action as one in rem, i.e., a claim to a right in the property, not one in personam against its former owners, thus precluding any personal liability on the Browns' part.[77] In sum, as the Browns had no contractual relationship at all with the Mirannes and had long since ceased to have any interest in the property which the Mirannes doggedly contend is still encumbered by their second mortgage, the Browns can have no personal liability to the Mirannes whatsoever. The district court properly granted the

---

[77] See Louisiana Nat. Bank of Baton Rouge v. O'Brien, 439 So.2d 552, 556-58 (La. Ct. App. 1st Cir. 1983), writ denied, 443 So.2d 590 (La. 1983) (holding that note marked "in rem" gave maker no liability at all beyond property itself and that creditor was unable to maintain any action against maker to reach any of maker's other assets).

Browns' motion for summary judgment.

### III

### CONCLUSION

As should now be apparent from the foregoing analysis, we conclude that the district court correctly held that the Mirannes are not entitled to have their previously removed state court suit remanded to state court under the well-pleaded complaint doctrine. The claim preclusion or res judicata branch of the artful pleading exception to that doctrine demonstrates beyond cavil that their state court suit, filed subsequent to the final judgments of the bankruptcy court on issues of federal law, need not be remanded. For essentially the same reasons, our de novo review of the district court's summary judgment dismissal of the Mirannes' claims against Regions and FSA satisfies us that the Mirannes' subsequent state court action, as removed to federal district court, is barred by res judicata. In like manner the court's exercise of supplemental jurisdiction over the claims against the Browns, and its dismissal of those claims, were not erroneous. Therefore, the district court's orders and judgment from which the Mirannes appeal are, in all respects,

AFFIRMED.


My brethren, conscientiously attempting to follow the guidance of *dicta* in a Fifth Circuit case[78] and a mystifying

---

[78]*Carpenter v. Wichita Falls Independent School Dist.*, 44 F.3d 362 (5th Cir. 1995).

footnote by the Supreme Court,[79] have concluded that the federal district court possessed removal jurisdiction over a state court claim principally seeking foreclosure of a second mortgage. Were it not for the ambiguities in the two preceding cases, *Carpenter* and *Moitie*, this result would fly in the face of the well-pleaded complaint limit on removal jurisdiction. I respectfully dissent because I believe the majority's unusual result is not compelled by the authorities. Briefly, *Moitie* means less than the majority asserts, and the *Carpenter dicta* explaining *Moitie* do not require the result here reached. I fear that the majority's result further confuses an already complex byway of federal jurisdiction.

Without repeating the majority's analysis, I agree in part with their holding that -- until the Supreme Court clarifies *Moitie* -- *Moitie* is "better explained as permitting removal of only those subsequent state court claims that are barred by the res judicata effect of a prior federal judgment." Critically, I would add that the prior judgment should have involved a claim made under <u>federal</u> law. *Ultramar American Limited v. Dwelle*, 900 F.2d 1412, 1415 (9th Cir. 1990).[80] I would also emphasize that *Moitie*

---

[79]*Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424 (1981).

[80]The majority argues that the *Ultramar* decision does not "purport to constrain *Moitie* removal to instances in which the <u>prior federal judgment</u> arose out of a case that a plaintiff himself had first <u>brought</u> in federal court." Maj. Op. at 28 (emphasis in original). However, *Ultramar* did involve a plaintiff who had asserted a prior claim, and the majority has cited no case where *Moitie* removal has been allowed where the plaintiff had not brought a prior suit grounded in federal law. The majority implicitly acknowledges that while it is not "constrain[ed]" from allowing *Moitie* removal where the plaintiff has not brought a prior claim,

35

permitted removal only where the claim being removed represented a plaintiff's attempt to seek relief in state court by recharacterizing an "essentially federal" claim that they had unsuccessfully pursued first in federal court. *Moitie* thus is a species of the artful pleading doctrine, a doctrine that permits a federal court to pierce the pleadings of a complaint which, although cloaked in terms of state law, actually falls within federal jurisdiction because of the applicability of federal principles. *Moitie*, 452 U.S. at 398, n.2. While the circuit courts have split in interpreting *Moitie*,[81] this narrow understanding is accepted by the majority here and the Fifth Circuit and is well-grounded.[82]

---

it is broadening the scope of *Moitie* removal beyond what has been allowed in other circuits.

[81]*Compare Travelers Indemnity Co. v. Sarkisian*, 794 F.2d 754 (2d Cir. 1986) (using plaintiff's choice of forum analysis to apply *Moitie*) *and Sullivan v. First Affiliated Securities, Inc.*, 813 F.2d 1368 (9th Cir. 1987) (using res judicata analysis).

[82]The Supreme Court's statement in *Moitie* that "at least some of the claims had a sufficient character to support removal" should be interpreted in light of the authority and examples cited in support of that proposition. 452 U.S. at 397, n.2; 101 S. Ct. at 2427, n.2. After citing Professor Wright's treatise for the proposition that federal courts may determine the "real nature" of a plaintiff's claim, the Court cited three cases in which courts did just that. Two were antitrust cases in which plaintiffs had pleaded antitrust claims under a South Carolina statute and the South Carolina courts had held that the statute only applied to conduct in <u>intra</u>state commerce, while the defendants' challenged conduct actually involved <u>inter</u>state commerce. *See In re: Wiring Device Antitrust Litigation*, 498 F.Supp. 79, 82-83 (E.D.N.Y. 1980) *and Three J Farms, Inc. v. Alton Boxboard Company*, 1979 -- 1. Trade Cases. ¶ 62,423 (S.C. 1978), *rev'd on other grounds*, 609 F.2d 112 (4th Cir. 1979), *cert. denied*, 445 U.S. 911, 100 S. Ct. 1090 (1980). In the third case, the plaintiff filed only state conspiracy claims, but the district court held that the claims implicated federal antitrust laws and labor issues governed by the

36

But accepting this explanation of *Moitie*, that case cannot confer federal jurisdiction here, because the plaintiffs have no "essentially federal" claim to recharacterize. Their claim rests on purported rights under a second mortgage and on transfers of property interests that allegedly abrogated those rights. This is a state law claim. The only federal element that plaintiffs could have pleaded is an anticipatory defense based upon the prior bankruptcy proceeding. To fall within footnote 2 of *Moitie*, the subsequent state claim must be "merely the same . . . claim in disguise." *Salveson v. Western States Bank Card Ass'n.*, 731 F.2d 1423, 1427 (9th Cir. 1984) (characterizing lower court's finding in *Moitie*). The plaintiffs here are not recharacterizing any federal claim. Instead, the second mortgage they seek to enforce was never expunged from the local deed records after a bankruptcy court judgment commanded sale free and clear of all liens and encumbrances. Moreover, the plaintiffs are suing a successor in interest to the bankruptcy sale, not simply the original party to the proceeding in bankruptcy court. Also unlike *Moitie*, the plaintiffs here were not unsuccessful plaintiffs in the prior bankruptcy proceeding, but were defendants there. In every respect, these characteristics represent a more complex procedural scenario than did the *Moitie* plaintiff's copycat pleadings in federal and then state court.

Given my druthers, I would hold that the instant case is

---

Labor Management Relations Act. *See Prospect Dairy, Inc. v. Dellwood Dairy Co.*, 237 F.Supp. 176, 178-79 (N.D.N.Y. 1964).

distinguishable from a narrow reading of *Moitie*. If, however, *Moitie* compels the result reached by the majority, then it appears significantly to have intruded into previously well-settled removal jurisprudence, whose anchor is the well-pleaded complaint rule. Consider this hypothetical: A sues B in federal court on a federal securities claim and wins a judgment. B then sues A in state court on a contract claim that was arguably a compulsory counterclaim in the preceding litigation. Following *Moitie* as interpreted by *Rivet*, does the federal court have removal jurisdiction? If so, hasn't *Rivet* moved the boundaries of removal jurisdiction far away from *Moitie*'s self-description as an "artful pleading" case?

The majority relies heavily on Judge Garwood's description of *Moitie* in the *Carpenter* decision. Notwithstanding *Carpenter*'s statement that "we *hold* that *Moitie* should apply only where a plaintiff files a state cause of action completely precluded by a prior federal judgment on a question of federal law," 44 F.3d at 370 (emphasis added), *Carpenter*'s statement is more *dicta* than holding. *Carpenter* was a very different case from *Moitie*. The defendants in *Carpenter* sought to rely on *Moitie* to prevent simultaneous litigation by a plaintiff in federal and state courts over the same grievance. Judge Garwood's extended, scholarly discussion of *Moitie* refused to adopt the proffered broad interpretation of *Moitie* that arguably would have prevented parallel litigation. As Judge Garwood put it, "whatever *Moitie* does mean, we are confident it does not mean so much." 44 F.3d at 368. The bulk of *Carpenter*'s discussion explains why some circuit

38

court cases have incorrectly construed *Moitie* to govern parallel litigation.[83] The *Carpenter* panel was not faced with anything like a plaintiff whose suit was in fact "completely precluded by a prior federal judgment on a question of federal law." This "holding" was merely a way to distinguish the cryptic *Moitie* footnote without "empty[ing] footnote 2 of all substantive content," and was surely not meant to broaden the *Moitie* decision's fleeting reference to the "federal character" of the plaintiff's claims into a completely new exception to the well-pleaded complaint rule. *See id.* at 370, n.11.

In attempting to demonstrate that the factors relied upon by Judge Garwood in *Carpenter* to allow remand are not present here, the majority contends that "in this case we do have a prior federal judgment, we do have federal preclusion law to apply, and we have plaintiffs who have not taken any preclusion risks ... but ... are clearly seeking by collateral attack to avoid the preclusive effect of a prior federal judgment ... ." Maj. Op. at 29. I would hasten to add to that list what we also do not have in this case, but was essential in *Moitie* and obviously present in *Carpenter*: a conceivable federal claim that could be asserted by the plaintiff. The majority essentially holds that a *conceivable federal claim is not necessary for removal*, as long as there is a federal defense of res judicata based on a federal judgment. To say that a plaintiff's claim can be removed to federal court when he has

---

[83]*See* 44 F.3d at 368-70, n.6, n.12 (disagreeing with the second circuit decision in *Travelers*, *supra*, n.4)

alleged no conceivable federal claim is true mockery of the well-pleaded complaint rule and the artful pleading doctrine.  How can the artful pleading doctrine apply if the plaintiff's claims can not be recharacterized into an essentially federal claim that has been omitted by artful pleading? *See Ultramar*, 900 F.2d at 1415 ("... recharacterization of purported state-law claims into federal claims was essential before removal could occur.").

Moreover, *Carpenter* expresses a fear of extending federal court removal jurisdiction that is realized in this case. Referring to the fact that plaintiff Carpenter could pursue litigation under theories of both federal and state constitutional law, Judge Garwood pithily observes, "we cannot say that the failure to make a state claim pendent makes it federal." *Id.* at 369.  Here, whether we like it or not, and whether the plaintiffs proceeded in good faith or not, they have filed a claim that is based purely and solely on state law.  It is not amenable to recharacterization as an "artful pleading" of a federal claim.  In my view, *Carpenter* expressly decries the implication that this state-law claim must be removed to federal court according to a broad interpretation of *Moitie*.

Any reader who has followed the majority opinion and this dissent thus far ought to appreciate that our dispute, while technical, is not trivial.[84]  The principles of limited federal

[84]The majority's holding has another unfortunate consequence. Allowing federal jurisdiction to turn on whether the plaintiff's claims are barred by res judicata allows the defendant two bites at the apple: if upon the plaintiff's motion to remand the defendant loses the res judicata issue and the case is remanded, the

40

court jurisdiction and the relative clarity of jurisdictional rules are at issue. *Moitie* and *Carpenter* can be read to authorize removal of this state-law-based case simply because it is subject to a federal preclusion defense. But to do so, as I have shown, intrudes on the scope of the well-pleaded complaint rule, expanding federal removal jurisdiction while engendering complexity and uncertainty in the future. I do not believe such results were intended by the Supreme Court in *Moitie* or by the *Carpenter* panel; the best way to effectuate those decisions' narrowly tailored goals is to apply them narrowly and specifically. Because the majority opinion does not do so, I respectfully dissent.

---

defendant can relitigate the res judicata issue again in state court. The prior federal determination of the res judicata issue will not bind the state court, because, by virtue of the federal court's resolution of the res judicata issue, the federal court was not a court of proper jurisdiction. *See* Robert A. Ragazzo, *Reconsidering the Artful Pleading Doctrine*, 44 HASTINGS L.J. 273, 311 (January 1993).